## ADAMS v. UNION NATIONAL SAVINGS AND LOAN ASSOCIATION.

[No. 8,360.  Filed January 7, 1913.  Rehearing denied June 18, 1913.
Transfer denied April 1, 1914.]

1. BUILDING AND LOAN ASSOCIATIONS.—*Repayment of Loan.—Statutes.—Public Policy.*—In view of the fact that from the time of earliest legislation on the subject of building and loan associations various statutes have provided that borrowing members could pay off their loans and withdraw their membership at any time before maturity by paying the amount due with interest, charges and fines, if any, and in view of the chief purpose for authorizing such associations, the right of a borrowing member to thus pay off his loan at any time must be deemed a part of the public policy of the State; hence any provision in the by-laws of such an association, or in the mortgage executed by a borrower whereby such borrower waives the right secured to him by §13 of the act of 1911 (Acts 1911 p. 390), to at any time repay his loan and withdraw from the association, is void as against public policy.  pp. 678, 679, 682, 683.

2. WORDS AND PHRASES.—*"Public Policy."*—While the character and limits of public policy are difficult of determination with any degree of exactness, the term is often defined as the policy of the law; hence the public policy of a state is the law of the state as expressed in its constitution and statute laws.  p. 679.

3. BUILDING AND LOAN ASSOCIATIONS.—*Statutes.—Construction.*—The fact that §13 of the act of 1911 (Acts 1911 p. 390), relating to the withdrawal of members from building and loan associations. provides that a nonborrowing member shall give three months' notice of his intention to withdraw, does not justify or warrant an association to obligate borrowing members to give notice of their intention to exercise the right secured to them by said section to pay off their loans and withdraw at any time, since the object in requiring notice in the case of nonborrowers is to afford the association time and opportunity to procure funds to meet the demands, and no such necessity can exist in the case of withdrawal by a borrowing member.  p. 682.

From Superior Court of Marion County (86,471); *Joseph Collier*, Judge.

Action by Frederick B. Adams against the Union National Savings and Loan Association.  From a judgment for defendant, the plaintiff appeals.  *Reversed.*

*Thomas M. Honan,* Attorney-General, *James E. McCullough, Edwin Corr* and *Thomas H. Branaman,* for appellant. *Walter Olds,* for appellee.

IBACH, C. J.—This was an action brought by appellant against appellee, a building and loan association, to secure the cancelation and release of a note and mortgage executed by him, he having previously tendered the amount thereof to appellee. Appellee filed its demurrer to the complaint for want of facts. The demurrer was sustained, to which ruling appellant excepted, and refusing to plead further, judgment was rendered against him for costs. The action of the trial court in sustaining the demurrer to the complaint is the only error assigned.

The note and mortgage which are made a part of the complaint are in the ordinary form made use of by building and loan associations doing business in this State, except that the mortgage contains the following clause, "the mortgagors further agree that in consideration that no fines shall be assessed against the said borrower for nonpayment of dues, interest or premiums until they shall have been delinquent therefor for three successive months, they will and do hereby waive the statutory right to repay the said loan at any time, and agree that the debt secured hereby can only be repaid in advance of its maturity by the mortgagors giving said mortgagee written notice of their desire to do so six months in advance of the time of such proposed repayment, during which time regular monthly payments of dues, interest and premium shall be made, and that a failure to repay said debt within thirty days after the expiration of said six months shall operate as a waiver of such notice, and require the giving of a new six months' notice before repayment of said debt can be made." This provision as to waiver appears not only in the mortgage, but it is required by the by-laws of the association and is stipulated in the borrower's application for a loan. These instruments are also made a part of the complaint.

It is conceded by appellee that a borrowing member of a building and loan association, irrespective of the provision of the by-laws and the application for loan above referred to and independent of a similar provision in the mortgage, may, under the statute, repay his loan with interest, fines, and other charges, if any, at any time before maturity, and at the same time withdraw from the association, but appellee insists that this right has been effectually waived in the manner above set forth. Appellant contends that whatever is contained in the by-laws or other instrument of appellee executed at the time the loan in question was procured, which attempts to prevent the borrower from paying off his loan at any time before maturity, is void, because it is directly contrary to the statute and consequently is against public policy, and therefore any attempt to waive this positive statutory right as to repayment can not be upheld. The statute referred to and relied upon by appellant is the following: ''Any borrower may repay his loan at any time, and may at the same time withdraw from the association, and for that purpose he shall pay to the association the full face amount of the principal of his loan with all interest, fines, and other charges accrued thereon under the by-laws or the terms of any note, mortgage, or other evidence of indebtedness given for said loan, deducting therefrom the withdrawal value of his stock pledged to secure such loan, as provided in the case of withdrawals of unpledged stock, and deducting also, in case the full amount of premium was paid in advance, so much of the premium paid by him on his loan as shall bear the same proportion to the whole premium by him paid, as the unexpired term for which the loan was made bears to the whole time for which the loan was made; and on such payment being made, the stock held by such person upon which his loan was made, shall be surrendered to the association and canceled, and thereupon the association shall deliver to such borrower his note, or bond and mortgage, or other evidence

of such loan, and shall also enter of record a full satisfaction of such mortgage.'' Acts 1911 p. 390, §13. Similar provisions are to be found in the various acts of the legislature of the State relating to building and loan associations from the time of the earliest legislation upon the subject to the present time, and by all these various enactments of the legislature a borrowing member of a building and loan association has been given the right to pay off his loan by paying the amount due with interest, charges and fines, if any, at any time before maturity, and at the same time withdraw from the association. §3413 R. S. 1881, Acts 1881 (s. s.) p. 90; §4113 Burns 1908, Acts 1885 p. 81. The important question therefore, is, whether the by-laws of appellee association and the stipulations contained in its contracts with its borrowing members which attempt to annul their rights granted by statute, to repay a loan at any time before its maturity, are contrary to the public policy of the State, and therefore void as provisions of the contract between appellant and appellee. Mr. Story in his work on contracts, after considering a great number of authorities announces the following: ''Public policy is in its nature so uncertain and fluctuating, varying with the habits and fashions of the day, with the growth of commerce and the usages of trade, that it is difficult to determine its limits with any degree of exactness. It has never been defined by the courts, but has been left loose and free from definition in the same manner as fraud. This rule may, however, be safely laid down, That whenever any contract conflicts with the morals of the times and contravenes any established interest of society, it is void as being against public policy.'' Story, Contracts (5th ed.) §675. Mr. Greenhood in his work on public policy says, ''By 'public policy' is intended that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good, which may be termed the policy of the law, or public policy in relation

to the administration of the law. The strength of every contract lies in the power of the promisee to appeal to the courts of public justice for redress for its violation. The administration of justice is maintained at the public expense. The courts will never, therefore, recognize any transaction which, in its object, operation or tendency is calculated to be prejudicial to the public welfare." Greenhood, Public Policy 2. It is often said that public policy is the policy of the law, and when we refer to what may be termed the public policy of a state, we mean the law of the state as expressed in its constitution and statute laws.

The section of the statute last cited above, giving a positive right to appellant to pay his loan at any time and withdraw his stock, is a plain and definite expression of the legislature upon that subject, there is nothing uncertain about its provisions, and when construed in the light of all previous legislation upon the same subject, there can be no doubt as to what the legislature intended when the present law was enacted. The evident purpose of the law was to enable a borrowing member of a building and loan association to pay off his loan and withdraw his stock at any time before maturity when he was prepared to pay the amount due the association, and a nonborrower to withdraw his stock upon three months' notice. Such a statute ought not to be permitted to become valueless by any by-law of such association, or by any contract which it might exact. The statute in such case must be held to control, and not the contract, whatever its provisions may be. In other words the contract and by-laws of the association must be molded to conform to the statute and the directors of the association have no power to adopt any by-laws which would be in conflict with the statutes of the State, or that would have the effect of nullifying the same. *Latimer* v. *Equitable Loan, etc., Co.* (1897), 81 Fed. 776, and cases there cited.

From a consideration of the various statutes passed by our State legislature affecting building and loan associations

it is manifest that the object and purpose in giving life and existence to such an association is to furnish to a large class of the citizens of the State an opportunity to build and procure homes who in all probability might not otherwise be able to do so, the underlying idea being to enable the poorer and less fortunate ones who can not borrow money by the usual and ordinary methods for the purpose of providing homes, to do so by the application of weekly or monthly payments out of their wages, and thereby encourage in them ideas of thrift and economy. These statutes together with many others enacted upon kindred subjects and the decisions of this and the Supreme Court construing the same, plainly indicate the policy of this State to be against the enforcement of such a contract as is insisted upon by the appellee in this case. Likewise it is well understood that a debtor can not be deprived of the benefit of usury laws because he may have voluntarily contracted to pay usurious interest, also that the equity of redemption of a mortgagor in real estate can not be waived by any provision of the mortgage or by the terms of any contract made contemporaneously therewith. Also the right to claim the exemption allowed by statute can not be waived. These are all doctrines which have been sustained consistently by the courts of this as well as many other jurisdictions because they are essential to the protection of the debtor class, who, under pressing necessities will often enter into unfavorable contracts, from which they should be relieved at the first possible opportunity. Consequently, the statute now under consideration was passed for the evident purpose of permitting the borrowing member to pay his debt at any time without notice. It would therefore seem that any plan adopted by such association to prevent the payment of loans at any time would not only be in direct conflict with the statute, but against the whole theory and policy of the law. We therefore hold that the stipulation of the by-laws and the instruments signed by appellant at the time he procured

his loan, which aim to prevent him from paying such loan at any time, are in clear contravention of public policy, and therefore null and void.

The fact that the statute requires a nonborrowing member, in order that he may withdraw from the association and receive the amount due him as an investor, to give a three month's notice of his withdrawal, furnishes no

3. three month's notice of his withdrawal, furnishes no support to the contention of appellee, for the provision for such notice in the case of a nonborrowing member is to allow the association, when required to pay back the money which such member has paid in, ample time to obtain sufficient funds to meet such demand, but in the case of the borrower, the money is to be paid by him into the association, and there can be no sufficient reason for holding a notice necessary in such a case.

We are mindful of the principle that one may waive statutory rights in certain instances where such waiver would not be against public policy. But here we have an

1. association which is entirely the creature of statute, which owes its existence to statute, and can do nothing save as authorized by the statute which created its rights, and in conformity therewith. To hold that such an association might, by contracts with its members, in any way nullify the provisions of the statute under which it exists, would be to open the way for wholesale disregard of legislative enactments for the public good, by the simple expedient of agreements to waive statutory rights, made at the behest of one party who occupies a much stronger position than the other party at the time the contract is made.

The court erred in sustaining the demurrer to appellant's complaint, and for this error the judgment is reversed.

## On Petition for Rehearing.

IBACH, J.—Counsel for appellee in support of its petition for a rehearing has filed a very able and exhaustive brief, which we have given careful consideration. The question which it most sharply emphasizes and urges, relates to that portion of the opinion wherein it was held that the provisions of the by-laws of appellee and of the various instruments signed by appellant at the time he procured his loan, which were intended to prevent him from paying his loan at any time, were null and void as against the policy of the law of this State.

In the argument, reference is made to the statute which requires six months' notice for the payment of special assessment liens after the improvement bonds have been sold, and it is urged that these cases are analogous to the present, and therefore we are wrong in holding that it is the policy of the law to permit the appellant to pay his loan "at any time", without notice, and that such a provision of our statute is one which could not be waived by the appellant at the time of contracting for his loan. We can not agree with counsel in this contention, for we observe a marked and important difference between a party whose property is assessed for a public improvement and the appellant here. In the one case, it is well understood that the statute was enacted to provide a means whereby municipalities might be able to carry out plans and obtain means with which certain improvements which tend toward the betterment of the health and comfort of their citizens and without which statute every effort to construct such public improvements would be defeated. It is a well known fact that investors would not deal in these special improvement bonds if they were required to receive at any time and in any amount the separate assessments spread against benefited property. As a general rule, the funds so invested belong to estates and individuals who require a specified and definite time fixed for payment.

Doubtless it was because this fact was so well understood that the legislature saw the necessity of providing for a fixed time during which all improvement bonds should run and a definite manner of paying the same so as to issue competitive bids at the bond sales and a sale thereof on the best possible terms to the municipalities, and consequently to the individual property owner whose property was assessed.

As to this case, a different principle is involved, and a different purpose was intended to be accomplished when the statute affecting appellant was enacted. Its purposes, we think, have been fully set forth in the original opinion, and these purposes recognized by the statutes of our State cannot be held to be dependent upon the contracting will of the individual intended to be protected thereby and the statute be thus made ineffectual, but it must be upheld whenever the courts are called upon so to do. In support of this view of the case, we add the following authority, *Zumpfe* v. *Gentry* (1899), 153 Ind. 219, 54 N. E. 805, and cases there cited. The petition for rehearing is therefore denied.

Note.—Reported in 100 N. E. 389; 102 N. E. 145. As to the rights and liabilities accruing to membership in building and loan associations, see 69 Am. Dec. 150. On the question of withdrawals from building and loan associations, see 35 L. R. A. 289. As to the right to withdraw from a building and loan association, see 8 Ann. Cas. 835. See, also, under (1) 6 Cyc. 122, 129; (2) 9 Cyc. 481; 32 Cyc. 1251; (3) 6 Cyc. 130.