TRAMMELL v. SAN ANTONIO LIFE INS. CO. (No. 6162.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 26, 1919. Rehearing Denied March 19, 1919.)

1. LIMITATION OF ACTIONS &#9756;127(4)—AMENDMENT OF PLEADINGS—RESTATING ORIGINAL CAUSE.

Where the substantial facts in the petition and in each amended petition were that defendant had obtained money from plaintiff under contract to make a loan on plaintiff's land, and to issue a life insurance policy, which contract defendant had breached and refused to return the money, a recovery under either of the petitions would bar recovery under the others or either of them, and there was no change of cause of action to subject it to operation of statute of limitations.

2. LIMITATION OF ACTIONS &#9756;125 — COMMENCEMENT OF ACTION — SUBSTITUTION OF PARTIES.

Where plaintiff, in petition and amended petitions, prayed judgment for himself for rescission of contract and for money paid, and in amended petition asked the same for the use and benefit of plaintiff bank, there was not such a change in the names of the parties as to set up a new cause of action and subject it to the operation of the statute of limitations.

3. PLEADING &#9756;11—MATTERS OF EVIDENCE— BREACH OF CONTRACT.

In action for money paid by plaintiff to defendant insurance company, upon verbal prom-

ise of company's agent, ratified and approved, to make a loan and issue a policy, the basis of the recovery was the company's breach of agreement, and plaintiff was not required to set out in his petition the application for insurance, which was a matter of evidence.

**4. INSURANCE ⬀36—ULTRA VIRES ACT—RE-TURN OF MONEY SECURED.**

An insurance company securing money under and by means of an ultra vires act or contract is not justified in appropriating it and refusing to pay it back.

**5. PRINCIPAL AND AGENT ⬀156—UNAUTHOR-IZED CONTRACT—PRINCIPAL'S LIABILITY TO THIRD PERSON.**

The principal will not be permitted to receive money belonging to another and keep it under the plea that the agent was not authorized to make the representations he did to secure the contract with plaintiff which the principal breached.

**6. CONTRACTS ⬀138(3)—MONEY PAID UNDER ILLEGAL CONTRACT.**

When money has been paid on an illegal contract, it can be recovered as long as the contract remains executory.

**7. CONTRACTS ⬀138(3) — ACTIONS FOR RE-TURN OF PREMIUM—DEFENSES.**

In an action to recover money paid to an insurance company under its agent's agreement to furnish a loan and policy, which contract was not fulfilled by the company on the ground that it was illegal and ultra vires, the contract being executory, plaintiff could recover, since the parties are not in pari delicto.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by H. L. Trammell against San Antonio Life Insurance Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed and remanded.

Carlos Bee, of San Antonio, and R. C. Gaines, A. E. Masterson, and A. R. Rucks, all of Angleton, for appellant.

Munson & Williams, of Angleton, and John F. Onion and Seay & Seay, all of Dallas, for appellee.

FLY, C. J. Appellant instituted this suit against appellee to recover the sum of $13,-512, which was paid as a premium on a life policy for $400,000 by appellant to appellee. The allegations of the petition, condensed, amount to a claim to the premium on the ground that an agent of appellee contracted with him for a loan on his farm for $400,000, which was to be secured by a lien on said farm and a policy on the life of appellant in the sum of $400,000; that with that understanding appellant had paid the premium, but appellee not only refused to give the policy, but also refused to grant the loan as it had promised. Not only was it alleged that the agent had made the contract, but

that said contract was confirmed and ratified by appellee through its president, Henry A. Hodge, after it had been made, and that said president had authorized the agent to make such contract before he consummated it. Appellee attacked the petition by a general demurrer and 11 special exceptions. The general demurrer was overruled, but the 11 special exceptions were sustained, and, appellant declining to amend, the cause was dismissed.

This cause was heard upon a third amended original petition, and it is the contention of appellee that the cause of action contained in that pleading is different from the one contained in the first amended petition, and is barred by limitation. The original petition was filed on July 13, 1914, and was brought by appellant against appellee, alleging that on September 11, 1913, he had drawn a draft on the Angleton State Bank for $13,-512, payable to the agent of appellee; that it was so drawn to pay for a life policy, and that the draft was accepted and collected by appellee, but that it had refused to issue and deliver the policy. There were no allegations as to any promise to lend money to appellant.

In the first amended petition the Angleton State Bank and E. J. Hodges are joined as plaintiffs, and they ask for the same amount as in the original petition, and made the additional allegations as to a promise on the part of agents of appellee to procure a loan from appellee for appellant, the policy to be used as additional security for the loan. It was also alleged that the money sued for was due "Angleton State Bank, or to H. L. Trammell, or E. J. Hodges," cashier of said bank. It was further alleged that the bank "for the account of" appellant paid the sum of $13,512 to appellee. Appellant prayed for rescission of the contract and for judgment for the money paid for the use and benefit of the bank. That petition was filed on May 29, 1917.

On November 12, 1917, the second amended petition was filed in which the allegations were similar to those in the first amendment, Harry L. Seay, liquidating officer of the insurance company, being added as a defendant, and the prayer was a judgment for the bank or for its use and benefit.

On January 17, 1918, the third amended petition, against which the exceptions were sustained, was filed, and again appellant appears alone as plaintiff, and after setting up the same cause of action as in the previous petitions prays for judgment in his favor for $13,512.

[1] Evidently the suit was for the same amount of money against the same defendant, based on the same grounds in the four petitions, and the cause of action is the same in all of the petitions, namely, an action for

---

⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes . .

$13,512 paid to appellee by appellant, unless the first and second amendments created a new and different cause of action by asking that the judgment be for the use and benefit of the Angleton State Bank. In all of the petitions it was alleged that the policy, although paid for, was not issued. Appellant did not change the character in which he sued, but at all times sought to maintain the suit in his individual capacity. He showed by his allegations that he' had drawn on the bank for the money, and it had paid it, and he sought through the medium of the suit to repay it. It was his money all the time, although in the first and second amended pleadings he desired to let the bank have the benefit of the judgment. If a judgment had been rendered in favor of appellant under the original petition, appellee would have been fully protected against any claim the bank might have set up to the money, and if the bank had obtained the money that would have been a perfect defense to any claim by appellant. In all of the petitions appellant was seeking to recover the same money, and the suit was not changed by setting up more details as to how the debt became due, nor by asking that the bank might have the benefit of the amount recovered. The different amendments merely amplified and rendered more precise the allegations in support of the cause of action alleged in the original or first amended pleadings, both of which were filed before limitation had barred the cause of action. The substantial facts were that appellee had obtained money from appellant under certain conditions, and had breached them, and refused to return the money, and a recovery under either of the petitions would bar a recovery on the others or either of them.

In the case of Ferguson v. Morrison, 81 S. W. 1240, it was alleged in the original petition that Ferguson had a warranty deed to the land, and in an amendment it was alleged that the land was conveyed to Ferguson in trust for the grantors in the deed, and the court held that the amendment did not set up a new cause of action.

In each of the petitions appellant was a party and praying for a judgment in his favor. for himself or for the use of others, and, if it could be held that limitation would run, it would not be against him, but against the Angleton State Bank. A judgment under either of the petitions would protect appellee against any further claim by any one for the $13,512. Becker v. Street Railway, 80 Tex. 475, 15 S. W. 1094; Foster v. Railway, 91 Tex. 631, 45 S. W. 376; Railway v. Reed, 203 S. W. 410.

[2] In the case of Roberson v. McIlhenny, 59 Tex. 615, the court said, in discussing whether the addition of other plaintiffs would constitute a new cause of action:

"It would not be in keeping with the spirit of our very liberal law of amendment to hold that such changes in the names of the parties set up a new cause of action, and subject it to the operation of the statute of limitations."

This court cited the Roberson-McIlhenny Case, and following it said:

"The law of amendment in this state is liberal, and it would be contrary to its spirit to hold that the addition of a new party, or even a change of the capacity in which one of a number of plaintiffs sue, would be setting up a new cause of action. If there had been an entire change of parties, or the capacity in which they sued, there might be some force in the contention, but even in that event the matter would resolve itself into one of costs." Laughlin v. Tips, 8 Tex. Civ. App. 649, 28 S. W. 551.

[3] The basis for the recovery of the sum of money claimed by appellant was not the application for insurance, but the verbal promise made by appellee's agent, and ratified and approved by it, and it was not necessary to set out the application for insurance in the petition. That was a matter of proof, and appellant was not required to set out his evidence in his petition, not even if it formed the basis of the suit. The exception was entirely too technical, and should have been overruled. Ins. Co. v. Freeman, 19 Tex. Civ. App. 632, 47 S. W. 1025.

[4, 5] It may be that the promises made by. the agent and ratified by the insurance company were ultra vires and void, but that would not authorize the company to appropriate the money of appellee and give nothing in return for it. As to discrimination, there was nothing in the pleadings tending to show that there was any discrimination in favor of appellant.

Strong reliance is placed by appellee on the case of Gause v. Ins. Co., 207 S. W. 346, decided by the Court of Civil Appeals for the Second District, in which it was held that a promise to make a loan which was breached was not a good defense to a promissory note given for the premiums on life policies issued to the maker of the note. The judgment of the lower court could have been affirmed on other grounds, and the decision on the nullity of the contract for the loan was unnecessary; for the maker of the note had admitted in writing, long after the note was executed, that he owed it, and he also showed that there had been no contract to make a loan. It is clear from the opinion that the defendant had received the policies and was receiving the benefit of the insurance. In the present case appellant had received nothing for his money—no policy and no loan. Getting money under and by means of an ultra vires act does not justify a corporation in refusing to pay it back and appropriating it. The allegation is that if the loan was not made the money should be returned, and that was not ultra vires, and appellee should be held bound by it. The distinct understanding was that if there was

no loan no policy should be issued and the money returned. This court in the case of Mutual Reserve Life Ins. Co. v. Seidel, 52 Tex. Civ. App. 278, 113 S. W. 945, in which a promissory note was given to an insurance company upon the agreement with an agent that the maker of the note might reject the policy if he so desired, and as soon as it was executed it was sold by the agent to an innocent purchaser, held:

"In this connection it may be stated that the fraud of the authorized agent will invalidate a contract entered into by him on behalf of his principal, though in perpetrating the fraud he acted without the knowledge or consent of the principal."

Again this court held:

"If the agent, Underwood, acted, as claimed by appellant, in excess of his authority, * * * without the knowledge or consent of his principal rendered the contract nugatory, and neither party could obtain any advantage, and appellant should be compelled to return the money to appellee which it has unauthorizedly obtained from him. It should not repudiate the acts of its agent and still profit by those acts."

To the same effect is the decision in the case of Ins. Co. v. Hargus, 99 S. W. 580. Appellee will not be permitted to receive money belonging to another and keep it under a plea that the agent was not authorized to make the representations he did to appellant.

[6, 7] It was alleged that no insurance policy was ever delivered by appellee to appellant, and consequently could not be accepted, and it was alleged that it was agreed that it should not be delivered or accepted unless accompanied by a loan. The contract was an executory one, and the rule is thoroughly established that when money has been paid on an illegal contract it can be recovered as long as the contract remains executory. Lewy v. Crawford, 5 Tex. Civ. App. 293, 23 S. W. 1041; McCall v. Whaley, 52 Tex. Civ. App. 646, 115 S. W. 658. Appellant is not seeking to enforce an illegal contract, but he wants the money back obtained from him through a fraudulent and void contract. He seeks to disaffirm and destroy the illegal contract, and have both parties placed in the same position they occupied before the void contract was made. Federal Life Ins. Co. v. Hoskins, 185 S. W. 607. If the contract for the policy was illegal, appellee will not be permitted to profit by it, but will be forced to return the money and leave the parties as they were when the contract was made. The case of Beer v. Landman, 88 Tex. 450, 31 S. W. 805, cited by appellee, is not in point. The parties are not in pari delicto, and the contract in that case was executed, and the distinction is made in the case cited

between the rules in executed and executory contracts.

None of the special exceptions should have been sustained, and the judgment is reversed and the cause remanded.