**LONE STAR BUILDING & LOAN ASS'N**
**v. LARCADE.**
No. 11981.

Court of Civil Appeals of Texas.   Galveston.
April 22, 1948.

Rehearing Denied May 13, 1948.

258

H. F. Thurow, of Houston, for appellant.

A. J. Eastman, Murray B. Jones, Bernard A. Golding, all of Houston (L. Sanford Schwing, of Houston, of counsel), for appellee.

GRAVES, Justice.

This statement, after being edited here in some non-controlling particulars, has been adopted from the appellee's brief as being substantially correct:

This suit was brought in the 11th District Court by appellee, R. Larcade, against the appellant, Lone Star Building & Loan Association and Frank Miller, its authorized agent, for the recovery of $3,000.00, with interest thereon from March 9, 1932, at six (6%) per cent per annum.

Appellee's action was based on counts for rescission and cancellation of an oral agreement with appellant, alleged to have been procured by fraud and misrepresentations, whereunder appellee was induced to pay over and deliver to appellant the sum of $3900.00, and sought to recover the portion of the sum still withheld from him in the amount of $3,000.00.

Appellant defended on the ground that the contract actually made was based upon a written application, and the by-laws of the Association; that such oral agreement, if made, was ultra vires; that its agents had no power under the law to make any such agreement, or representations; that no misrepresentations were made;

that all of the money sued for herein by appellee was a membership fee, payable under its by-laws, upon a stock subscription in the Company, taken out by him, of $60,000.00.

The case was tried before a jury in October, 1947; and, in response to special issues submitted by the court in inquiries it deemed to correctly embody all the controlling questions of fact raised by the pleadings and evidence, the jury found, in substance, that: (1) negotiations were carried on with appellee by one Frank Miller, the duly authorized agent of appellant; (2) appellee delivered the total sum of $3,900.00 (represented by several checks) to the said Frank Miller as agent for appellant; (3) the sum of money delivered to appellant, through its agent, by appellee was delivered upon the condition and agreement and so accepted by the Association, that all of the same could be withdrawn when desired; (4) in connection therewith, it was likewise so represented that the amount of such money credited to surplus account above the line, in the pass-books, would draw ten (10%) per cent interest per annum; (5) appellee believed this representation as to interest at ten (10%) per cent on the money, credited to surplus account; (6) such sum was delivered to appellant's agent, in reliance upon such statement made to appellee by its stated agent.

Upon the verdict of the jury, "and such additional considerations and findings as are authorized by law having been had and made by the Court", judgment was rendered for appellee in the sum of $3,000.00 with interest thereon at the rate of six (6%) per cent, aggregating $5,628.00. Defendant Frank Miller was dismissed from the suit, after the jury returned its verdict.

■ As the enumerated findings of the jury plainly imply, the court submitted what it deemed to be the controlling issues of fact arising upon the cause of action declared upon by the appellee, on the one hand, and controverted by the appellant on the other, in three overall groups of issues; Nos. 1 and 2 seeking to elicit whether Frank Miller had been the agent

of and authorized by appellant to negotiate in its behalf in connection with the negotiations with appellee and his son, and if so, whether appellee delivered to him as such, checks for $3,000.00; Nos. 3 and 3a asking whether all monies were delivered to appellant through Miller, and accepted by it under agreement that they could be withdrawn when desired by appellee, and others to whom same may have been credited; Nos. 4, 5, and 6 inquiring whether Miller represented to appellee, when each check was delivered to him, that the amount credited to surplus account, in appellant's pass-books above the line, would draw 10 per cent interest per annum; whether appellee believed such representation, and delivered such checks to Miller in reliance thereon. Appellant inveighs against the judgment so adverse to it below, in some 24 points of error. In Nos. 1 to 3, inclusive, 9, 10, 19, 20, and 23, it assigns error in the court's submission of its given issues Nos. 1, 2, 3, 3a, 4, 5 and 6; in Nos. 4 and 8, it asserts error on the court's part in admitting testimony and other evidence, to the effect that promises and representations on the part of appellant and its agent had been made that it would pay eight (8%) per cent or ten (10%) per cent interest, or dividends, to the appellee, and that his money was there on "deposit", and could be withdrawn at any time.

In points Nos. 5, 11, 14, 15, and 17, it contends the court erred in refusing to submit special issues requested by the appellant, inquiring whether its agent Miller advised the appellee that dividends would only be paid if the Company made enough money to do so; whether or not a reasonably prudent person would have known or discovered that such money could not be withdrawn; whether the appellee knew that appellant did not issue more than $10,-000.00 worth of stock to any one person; and whether the appellee, in the exercise of ordinary diligence, could have known he was subscribing to take appellant's stock, and what he did.

In Nos. 6, 7, and 22, complaint is made of the overruling of certain special exceptions appellant leveled at the appellee's pleading, to the effect that he was told he could withdraw his money at any time, which he claimed he had "deposited" with appellant, as though in a bank, etc.

In Nos. 12, 13, and 16, it claims error in the refusal of its motions for an instructed verdict in its favor, and to require appellee to elect his theory of his case before submission of issues to the jury; further, that the court's definition of the word "agent" was error, in not charging that the agent's power was limited by the Texas statutes, etc.

In final point No. 24, error is assigned against the court's overruling of appellant's motion for continuance.

It will be noted that none of the enumerated points attack any of the jury's findings as having lacked support in the evidence; nor could that have well been done, because, upon a review of the whole record, this Court finds that the evidence as to what the parties did was, in all of its controlling features, undisputed; so that, the issues raised on the appeal become the controlling questions of law, springing from an established relationship between the parties, and their uncontroverted acts in pursuit of them, which renders extended discussion upon procedural matters developed upon the trial no longer material.

At the outset, it is plain that the appellee declared upon an oral contract, alleged to have been made by him with the appellant, through its agent, Miller, upon the latter's representation that he could place his money with the appellant, draw eight (8%) per cent or ten (10%) per cent dividends, or interest thereon, meanwhile, and at any time thereafter withdraw any or all of it, as he might desire; further, in his suit herein he did not seek to enforce even that contract, but, instead, sought a rescission, or cancellation of it, as such a verbal one, on the sole ground that he was induced to enter into it by reason of the appellant's fraud, acting through its duly authorized agent, Mr. Miller, wherefore, the ultimate issue of law here is whether or not the court, under that evidence, was justified in holding the acts so found to have been committed by the appellant, and

its agent, such fraud as authorized the cancellation the court decreed.

While, as indicated, a rather full abstract of appellant's contentions on appeal has been made, in order that it may have advantage thereof in getting them into the record of the litigation, this Court determines that none of them point out reversible error; indeed, it becomes apparent from the record as a whole that this cause, in effect, presents practically a counterpart in its controlling features to that passed upon by this court in 1940 in Lone Star Building & Loan Ass'n v. Ford, Tex.Civ.App., 141 S.W.2d 696, 698. In the Ford case the same sort of verbal contract, based on fraud, was sought to be set aside upon precisely the same ground, and the money paid under it recovered, with 6 per cent interest thereon from the time of its detention, and that this same appellant defended against it in controlling features upon the same defenses it has so interposed here.

The Supreme Court of Texas in that cause declined any relief to the appellant therein in its order "Dismissed, Correct Judgment".

This Court's opinion in the Ford case, delivered by Chief Justice Monteith, after a full statement of the facts and an analysis of the nature and character of the action as alleged and pursued by Mrs. Ford, which, as stated, is upon identical lines with that of the appellee in the present suit, thus in substance declared the rules of law it held to be determinative of it in her favor, to-wit:

"In the instant case appellee alleged and the jury found that there was a definite oral agreement between appellee and the agent of appellant that, if appellee would deposit certain funds with appellant Association, she would be permitted to withdraw said funds so deposited, with 8 per cent interest at any time she desired; * * *. Unquestionably these were representations of material existing facts and are supported by the evidence.

\* \* \* \* \* \*

"The record shows that appellee was an elderly woman inexperienced in matters pertaining to building and loan associations; that she acted in absolute reliance upon the representations made to her by appellant's agent, and that she did not read the application card signed by her at his suggestion whereby she became obligated to purchase stock of appellant Association valued at $85,000 and to pay $1,700 as a commission therefor.

"In the case of Trammell v. San Antonio Life Ins. Co., Tex.Civ.App., 209 S.W. 786, 789 the court, in passing on the identical question involved in the instant case says: 'Appellant is not seeking to enforce an illegal contract, but he wants the money back obtained from him through a fraudulent and void contract. He seeks to disaffirm and destroy the illegal contract, and have both parties placed in the same position they occupied before the void contract was made. Federal Life Ins. Co. v. Hoskins, Tex.Civ.App., 185 S.W. 607. If the contract for the policy was illegal, appellee will not be permitted to profit by it, but will be forced to return the money and leave the parties as they were when the contract was made.' "

Since what has been said determines, adversely to appellant, all the facts entering into the correct application to this cause of the court's prior declaration of the law upon like facts in the Ford case, it is deemed unnecessary to elaborate thereon. This for the obvious reason that the facts as so found here make a stronger case for the application of the law characterizing such transactions as fraudulent than those in the Ford case; for instance, while the appellant here made the same claim that it had a written contract with this appellee, based upon what it termed its "membership card", together with its own by-laws, neither any such membership card nor by-laws was introduced in evidence upon this trial, the appellee's son here uncontradictedly having testified that when one of appellant's stock membership cards was presented to him for signature, he declined to execute the same for his father; whereupon appellant's agent, Mr. Miller, represented that he did not want that, but merely wanted it signed as a signature card; whereupon, all other matter was stricken

from it, and the son signed it as such signature card only. Not even that was produced upon the trial.

Furthermore, it indisputably appeared that, while in the Ford case Mrs. Ford was only charged a $2 per share membership fee for the stock it was claimed she had subscribed for, in this instance a $5 fee was charged. It seems that, while the law permitted in a bona fide stock subscription contract, which neither of these was, such a $2 fee to be charged, it did not so permit a $5 fee, which appears to have been a violation of law, per se. Shaw v. Lone Star Building & Loan Association, 123 Tex. 373, 71 S.W.2d 863.

It follows, therefore, that appellant has presented a weaker case here than it did in the Ford case, under these and many other authorities that might be cited. Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S.W. 1034, 51 A.L.R. 1; Shaw v. Lone Star, etc., 123 Tex. 373, 71 S.W.2d 863; Southern Building & Loan Ass'n v. Dinsmore, 225 Ala. 550, 144 So. 21; State Building & Loan Association v. Bradwell, 227 Ala. 606, 151 So. 689; Southern States Building & Loan Association v. Mason, Tex.Civ.App., 29 S.W.2d 839; Levison v. Boas, 150 Cal. 185, 88 P. 825, 12 L.R.A., N.S., 575, 11 Ann.Cas. 661; Equitable Building & Loan Association v. Brady, 175 Ga. 43, 164 S.E. 674; Adams v. Union Association, 55 Ind.App. 676, 100 N.E. 389, 102 N.E. 145; Frisby v. Armenian Ass'n, 107 Pa.Super. 313, 163 A. 357; Federal Life Ins. Co. v. Hoskins, Tex.Civ.App., 185 S.W. 607; Commercial Jewelry Co. v. Braczyk, Tex.Civ.App., 277 S.W. 754; State Building & Loan Ass'n v. Bradwell, 227 Ala. 606, 151 So. 689; Trammell v. San Antonio Life Ins. Co., Tex.Civ.App., 209 S.W. 786; Revised Civil Statutes of Texas, Article 4004; 6 Ruling Case Law, Sec. 107 et seq.; 13 C.J. 499; 17 C.J.S., Contracts, § 274; 87 A.L.R. 107; 10 T.J. 901, 811; 20 T.J. 28, 29, 69, 34; Black on Rescission and Cancellation, Vol. 1, 2d Ed., pages 176, 189, 190 and 252.

█ This Court holds that appellant failed to make out its claim that a written contract was made, and that the appellee never agreed to subscribe for any of its stock, and never knew any such claim would be made until the appellant declined to return any of his money on his request therefor; that, on the contrary, the appellant indisputably showed that it never intended either to return the appellee's money on request, or to pay either 8 or ten per cent interest thereon in any event; because it admits that it took all of his $3,000 into its surplus account, and continued to insist that it constituted stock membership fees, hence an unequivocal case of fraud under the Texas statute, R.S. Art. 4004, was thus made out; see, also Texas Juris., Vol. 20, Page 34, Sec. 17.

█ It is clear that appellant's specially requested issues, as well as its objections to those submitted by the trial court, were without merit, and that they were based upon a misconception of the contractual relations between the parties; further, that there was no reversible error in the trial court's refusing appellant's motions, either to preemptorily instruct the jury in its favor, or to require appellee to elect his theory of his case before submitting special issues to the jury; as indicated supra, the appellee had already very plainly elected his theory of the case, in so declaring for a cancellation of a verbal contract, whereas the appellant still insisted—without any support either in the law or the evidence—that there had been a written contract.

█ Appellant's motion for a continuance was shown to have been without merit; it appears that the cause had been pending in the trial court for some 15 years. While the motion at the close of that long period was duly filed, it seems to have failed to comply with the Rule relating thereto, No. 252, Texas Rules of Civil Procedure; in that, it failed to set out how long appellant's present attorney had been in the cause, nor did it specify the names of witnesses, which it desired to substitute for preceding ones therein, nor reflect what appellant expected to prove by them, should they be found, as to which no certainty was made to appear. See Service Mut. Ins. Co. of Texas v. Territo, Tex.Civ.App., 147 S.W.2d 846.

Without detailing further defects, it is held that the trial court did not abuse its

discretion in such refusal. Lloyds Casualty Company v. Buckner, Tex.Civ.App., 56 S.W.2d 658; Smith v. Triplitt, Tex.Civ. App., 83 S.W.2d 1104; Hranicky v. Trojanowsky, Tex.Civ.App., 153 S.W.2d 649; Stribling v. Stribling, Tex.Civ.App., 85 S.W.2d 315.

Without further discussion, the conclusions stated require an affirmance of the judgment; it will be so ordered.

Affirmed.