JEFFERSON COUNTY TITLE GUARANTY CO. ET AL. v. W. A. TARVER ET AL., COMPOSING BOARD OF INSURANCE COMMISSIONERS.

No. 5621.   Decided June 25, 1930.
(29 S. W., 2d Series, 316.)

*E. L. Nall* and *W. T. McNeill,* for relators.

The complainants do not question the right of the Legislature to alter, reform or amend charters insofar as permitted by the constitution of the United States (Rev. Stats., Art. 1318) but their contention in this case is that Section 2 of House Bill 153 is not an alteration nor does it reform or amend the charter of the complainant, the Jefferson County Title Guaranty Company, but the effect of said section is to completely destroy the contract which was made between the State and this Company, as well as between the Company and its stockholders and the State and the stockholders of the Company at the time the charter was granted. Section 184 of 14 Corpus Juris, page 182; Telephone Co. v. Keokuk, 226 Fed., 82; Dartmouth College v. Woodard, 21 U. S., Law. Ed., 629; 12 Corpus Juris, 1027; 14 Corpus Juris, 494. It is well recognized that the reserved power of alteration, amendment and repeal is not without limitation, Fletcher's Cyclopedia of Corporations, 4208; Berea College v. Kentucky, 211 U. S., 45, 53 L. Ed. 81; Larabee v. Dolley, 175 Fed., 365; Arkansas Stave Co. v. State, 94 Ark., 27, 27 L. R. A., (N. S.) 255, 140 Am. St. Rep., 103, 125 S. W., 1001; Ozan Lumber Co. v. Biddie, 87 Ark., 587, 113 S. W., 796; Garey v. St. Joe Min. Co., 32 Utah, 497, 12 L. R. A., (N. S.) 554, 91 Pac., 369.

Probably the best general statement of the extent of the reserved power of alteration and amendment, is that of Mr. Justice Swayne of the United States Supreme Court, wherein he said that, "the power of alteration and amendment is not without limit. The alterations must be reasonable; they must be in good faith, and be consistent with the scope and object of the act of incorporation. Sheer oppression and wrong cannot be inflicted under the guise of amendment or alteration. Beyond the sphere of the reserved powers, the vested rights of property of corporations, in such cases, are surrounded by the same sanctions and are as inviolable as in other cases." Shields v. Ohio, 95 U. S., 319, 24 L. Ed., 357; St. Louis, I. M. & St. P. R. Co. v. Paul, 173 U. S., 404, 43 L. Ed., 746; Lawrence v. Rutland R. Co., 80 Vt., 370, 15 L. R. A., (N. S.) 350, 13 Ann. Cas., 475, 67 Atl., 1091.

A change in the amount of the capital stock of a corporation, like a change in the objects thereof, is fundamental and cannot be made without clear legislative authority. Marion Trust Co. v. Bennett, 169 Ind., 346, 124 Am. St. Rep., 228, 82 N. E., 782.

An amendment of the charter of a corporation increasing its capital stock, whether common or preferred, is fundamental. Atlanta Steel Co. v. Mynahan, 138 Ga., 668, 75 S. E., 980; State v. Railroad Commission, 137 Wis., 80, 117 N. W., 846.

*Robert Lee Bobbitt,* Attorney General, *W. A. Wade,* Assistant, *Black & Graves,* and *Stewart & De Lange,* for respondents.

The Constitution and general laws in force at the time complainant's charter was granted are parts thereof, to the same extent as if expressly incorporated therein. The State's exercise of the reserved power to require an amendment to the charter increasing the capital stock as a condition precedent to continuing the business of title insurance does not abrogate or impair any contract right. Miller v. The State, 15 Wall., 478; Stone v. Wisconsin, 94 U. S., 181, 24 L. ed. 102; Tomlinson v. Jesup, 15 Wall., 454, 21 L. ed. 204; Hamilton Gas, Light & Coke Co. v. Hamilton City, 146 U. S., 258, 13 S. C., 90, 36 L. ed. 963; Greenwood v. Union Freight Co., 105 U. S. 13; Hammond Packing Co. v. State of Arkansas, 212 U. S., 322, 29 S. C., 370, 53 L. ed., 530; St. Louis Iron Mountain & St. Paul R. R. Co. v. Paul, 173 U. S., 404, 19 S. C., 419, 43 L. ed., 744; Citizens Savings Bank v. Owensboro, 173 U. S., 636, 9 S. C., 530, 43 L. ed., 840; Sinking Fund Cases, 99 U. S., 700, 25 L. ed., 496; St. Louis Iron Mountain v. Paul, 64 Ark., 83, 40 S. C., 705, 62 A. S. R., 154; Holyoke v. Lyman, 15 Wall., 500, 21 L. ed., 133; Watson Seminary v. Pike Co., 50 S. W., 880, 45, L. R. A., 675; Spriggs v. Western Telegraph Co., 46 Mo., 67; Ashuelot R. R. Co., v. Elliott, 58 N. H., 451; Worcester v. Norwich & W. R. R. Co., 109 Mass., 103; Hyatt v. Whipple, 37 N. Y., 595; Sioux City Street R. R. Co. v. Sioux City, 138 U. S., 108, 11 S. C., 226, 34 L. ed., 898; Ramapo Water Co. v. New York, 236 U. S., 579, 59 L. ed., 731; Mo. Pac. R. R. Co. v. Kansas, 216 U. S., 262, 30 S. C. 330, 54 L. ed., 472; Seattle R. R. Co. v. Seattle, 190 Fed., 75; Lothrap v. Stedman, 15 Fed. Cas., No. 8519; Hammons v. Watkins, 262 Pac., 615; State v. Miller, 30 N. J., 368; Joslyn v. Pacific Mail Steamship Co., 12 N. Y., 329; Leep v. St. Louis I. M. & S. R. R. Co., 58 Ark., 407, 25 S. W., 75, 41 A. S. R., 103, 27 L. R. A., (N. S.) 254; Arkansas Stave Co. v. State, 94 Ark., 27, 125 S. W., 1001, 140 A. S. R., 103, 27 L. R. A. (N. S.) 255; Delaware L. & W. R. R. Co. v. Board of Public Utilities, 85 N. J., 28, 88 Atl. 849; State v. Railway Commission of Wisconsin, 140 Wis., 145, 121 N. W., 919; Avondale Land Co. v. Shook, 140 Ala. 379, 54 So., 368; Kaiser

Land & Fruit Co. v. Curry, 155 Cal., 638, 103 Pac., 341; Larabee v. Dally, 175 Fed., 365; Berea College v. Kentucky, 211 U. S., 245, 53 L. ed., 31; Webster v. Susquehanna Pole Line Co., 112 Me., 416, 76 Atl., 254, 21 Ann., Cas. 357; Deloria v. Alkins, 158 Mich., 232, 122 N. W., 559; State v. Jackson Cotton Oil Co., 95 Miss., 6, 48 So., 300; Lord v. Equitable Life Ins. Co., 194 N. Y., 212, 87 N. E., 443; Light & Power Co. v. Railway Commission, 56 Ore., 468, 109 Pac., 273; Lawrence v. Rutland, R. R. Co., 80 Vt., 370, 67 A., 1091, 15 L. R. A., (N. S.) 350; Close v. Glenwood Cemetery, 107 U. S., 465, 2 S. C., 267, 27 L. ed., 408; City of Covington v. Kentucky, 173 U. S., 231, 19 S. C., 383, 43 L. ed., 679; Adirondack R. R. Co. v. N. Y., 176 U. S., 335, 29 S. C., 460, 44 L. ed., 492; Fairhaven & W. R. Co. v. City of New Haven, 203 U. S., 379, 27 S. C., 74, 51 L. ed., 237; Sears v. City of Akron, 246 U. S., 242, 38 S. C., 245, 62 L. ed., 68; International Bridge Co. v. People of N. Y., 254 U. S., 126, 41 S. C., 56, 65 L. ed., 176; Macon etc., R. R. Co. v. Gibson, 85 Ga., 1, 11 S. E., 442, 21 A. S. R., 135; Calder v. Michigan, 218 U. S., 591, 31 S. C., 122, 54 L. ed., 1163.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is an original application for mandamus filed in the Supreme Court by Jefferson County Title Guaranty Company, hereafter referred to as the company, and certain individuals interested therein, against W. A. Tarver, W. S. Pope and J. W. DeWeese, composing the Board of Insurance Commissioners of the State of Texas, hereafter referred to as the board, seeking to compel the board to issue to the company a certificate to do business in Texas under what is generally known as the "Title Guaranty Law," being Chapter 40, page 77, of the Acts of the Regular Session 41st Legislature of Texas, 1929, effective February 27th, 1929. The company was duly incorporated in 1927 under and by virtue of Subdivision 57 of Article 1302, R. C. S. of Texas, 1925, with a capital stock of $50,000.00, all subscribed and all fully paid in prior to the taking effect of the act of 1929.

After the taking effect of the act of 1929, the company complied in every respect with the requirements thereof, except it failed to increase its capital stock to $100,000.00, and applied to the board for a certificate to do business in the State of Texas, under the act of 1929, as aforesaid, which certificate the board refused to issue, because the board contended that under said 1929 act, it was re-

quired, as a prerequisite to the issuance of such certificate, that the company increase its capital to $100,000.00. The company has declined to comply with the act in this respect, and has filed this action in the Supreme Court in the form of an original mandamus proceeding to compel the issuance of such certificate.

The company contends that it is entitled to have the certificate to issue:

(a) Because the charter issued by the State of Texas to the company prior to the taking effect of the act of 1929, is a contract between the company and its members, and is also a contract between the State of Texas and the company, as well as a contract between the stockholders of the company and the State, and therefore the act of 1929 requiring such concerns to have a capital stock of $100,000.00 cannot apply to this company for the reason that to so apply such statute would be to completely destroy the contract created by the issuance of the charter.

(b) Because under Section 23 of the act of 1929 the company is exempt from the provisions thereof requiring a capital stock of $100,000.00.

As germane to a decision of this case we copy the following provisions of the 1929 act.

"Sec. 2. All corporations created and/or operating under the provisions of this law must have a paid-up capital of not less than One Hundred Thousand ($100,000.00) Dollars. Any corporation organized hereunder having the right to do a title insurance business may invest as much as fifty per cent of its capital stock in an abstract plant or plants, provided the valuation to be placed upon such plants shall be approved by the Board of Insurance Commissioners of this State.

"Provided that this Section shall not apply to corporations heretofore organized and operating, if such corporation has its domicile in a county of not less than 10,000 inhabitants as shown by the United States census of 1920, and shall have a capital stock of at least $25,000.00, and shall confine its writing of title policies to property located in the county of its domicile.

"Sec. 3. Corporations so formed as well as foreign corporations and those created under Subdivisions 57, Article 1302 of the Revised Statutes of 1925, or under Chapter 18, Title 78, Revised Statutes of 1925, or any other law insofar as the business of either may be a title insurance business, shall operate in Texas under the control and supervision and under such uniform rules and regula-

tions as to forms of policies and underwriting contracts and premiums therefor, as may be from time to time prescribed by the Board of Insurance Commissioners of Texas; and no Texas or foreign corporation whether incorporated under this Act or any other law of the State of Texas shall be permitted to issue any title policy or mortgage certificate or underwriting contract on Texas property other than under this Act and under such rules and regulations. No policy of title insurance of guarantee of any character on Texas titles shall be issued or valid unless written by a corporation complying with all provisions of and authorized or qualified under this Act. Before any rate provided for herein shall be fixed or changed, reasonable notice shall issue, and a hearing afforded to the companies affected by this Act. Every company doing business under this Act shall file with the Board of Insurance Commissioners the form of guarantee certificate, mortgage policy or any policy of title insurance before the same shall be issued, and the form must be approved by the Board, and be uniform as to all companies. Under no circumstances may any company use any form until after the same shall have been approved by the Board.

"The Board of Insurance Commissioners shall have the right and it shall be its duty to fix and promulgate the rates to be charged by corporations created or operating hereunder for premiums on policies or certificates and underwriting contracts. The rate fixed by the Board shall be reasonable to the public and nonconfiscatory as to the company. For the purpose of collecting data on which to determine the proper rates to be fixed, the Board shall have the right to require the companies operating in Texas to submit such information in such form as it may deem proper, all information as to loss experience, expense of operation, and other material matter for its consideration.

"Rates when once fixed shall not be charged until after a public hearing shall be had by the Board, after proper notice sent direct to all companies interested in writing this business, and after public notice in such manner as to give fair publicity thereto for two weeks in advance. The Board must call such hearing to consider rate changes at the request of a company writing title insurance, or if the Board thinks that a change in rates may be proper. Any company or other person interested, feeling injured by any action of the Board with regard to rates, shall have the right to file a suit in the District Court of Travis County, within thirty days after the Board has made such order, to review the action, in which suit the

Court may enter a judgment correcting the Board's order and fixing such rates as may be proper, or affirming the action of the Board. Under no circumstances shall any rate of premium be charged for policies or underwriting contracts different from those fixed and promulgated by the Board or those fixed in a final judgment of the Court as herein provided.

"Sec. 4. Corporations organized under the laws of any other State shall be permitted to do business in this State on exactly the same basis and subject to the same rules, regulations and prices and supervision as fixed for Texas corporations.

"Sec. 9. The Board of Insurance Commissioners after having satisfied itself by such investigation as it may deem proper with reference to the payment of capital stock and the value of the assets offered in payment thereof (the expense of which examination shall be borne by the company), shall issue to such company a certificate of authority to transact the characters of business provided for herein, which said certificate shall expire on the first of June next succeeding. Thereafter on or before the first of June and after the filing of the annual report herein required of each company, the said Board, upon being satisfied that the laws applicable to such companies have been complied with, shall issue a certificate of authority to said company to conduct such business until June 1st of the ensuing year. No company domestic or foreign shall transact business under this Act unless it shall hold a valid certificate of authority.

"Sec. 23. From and after the passage of this Act no corporation shall be chartered under Subdivision 57, Article 1302, Revised Statutes of Texas, 1925, but all corporations heretofore incorporated and now doing business in Texas, shall be permitted to continue in business and shall be subject to all the provisions of this Act and such companies shall have six months within which to comply with the requirements of this Act with reference to investments and deposits. Article 1344, Revised Statutes of Texas, 1925, shall not be construed to apply to companies acting hereunder, unless they have charter power to do a 'trust and fiduciary' business under subdivisions (3) and (4) hereof of Section 1 hereof."

As necessary to a proper decision of this case we also quote the following provisions of our State constitution:

Article XII, Sec. 1. "No private corporation shall be created except by general laws."

Article XII, Sec. 2. "General laws shall be enacted providing for the creation of private corporations, and shall therein provide fully for the adequate protection of the public and of the individual stockholders."

As necessary to a decision of this case we also quote Article 1318, R. C. S. of Texas, 1925, in force at the time this company's charter was obtained:

"All charters or amendments to charters, under provisions of this chapter shall be subject to the power of the Legislature to alter, reform or amend the same."

Under the above constitutional and statutory provisions we hold that the company having been incorporated under the constitution and general laws of Texas, expressly reserving in the Legislature the right to alter, reform or amend incorporation laws and charters is subject to the act of 1929, requiring a capital stock of $100,000.00 as a condition precedent to doing business in this State, and that such statutory requirement does not impair any contract evidenced by the charter granted by the State to the company. We further hold that the Constitution and general laws of this State in force at the time the charter here under consideration was granted are parts thereof to the same extent, and with the same force and effect, as if they were expressly incorporated or written therein; and this being the case, the State's exercise of its reserved power to require an amendment to the charter of this concern increasing its capital stock to $100,000.00 as a condition precedent to continuing in business does not impair or abrogate any contract between the company and its members, between the State and the company, or between the stockholders of the company and the State. 14 C. J., p. 183, Secs. 187, 188, Id., p. 184, Secs. 189–190; 12 C. J., p. 997, Sec. 610, Id., p. 1024, Sec. 649, Id., p. 1025, Secs. 650–651, Id., 1026, Sec. 652, Id., p. 1027, Sec. 654, et seq., Id., p. 1051, Sec. 686; 7 R. C. L., p. 111, Sec. 188, Id., p. 115, Sec. 90, Id., p. 118, Sec. 92, Id., p. 121, Sec. 93, Id., p. 124, Sec. 95; Polk v. Mutual Reserved Fund Life Association of N. Y., 207 U. S., 310, 28 S. C., 65, 52 L. Ed., 222; Trustees of Jefferson College, Etc. v. Washington & Jefferson College, etc. (Pennsylvania College Cases), 80 U. S., 190, 20 L. Ed., 550; Northern Central Ry. Co. v. Maryland, 187 U. S., 258, 23 S. C., 62, 47 L. Ed., 167; Calder v. Michigan, 218 U. S., 591, 31 S. C., 122, 54 L. Ed., 1163; Integrity Mutual Ins. Co. v. Boys et al., 127 N. E., 748, 293 Ill., 307; State v. Dillbeck, 297 S. W., 1049 (Tex. Civ. App. Writ Ref.); Houston B. & T. Ry. Co. v. Horn-

berger, 143 S. W., 272 (Tex. Civ. App. Writ Ref.). We might multiply the citation of authorities sustaining the above holding many times, but we think those cited above are sufficient.

We further hold that it is the settled law of this State and of the United States that a corporation such as this has no vested right in the privilege of doing a title guaranty business as a corporation, and therefore suffers no loss of any vested right of property in a change in the statute law prescribing a larger capital stock as a condition precedent to continuing business in this State. 32 C. J., p. 918 et seq.; Id., p. 982; 38 Cyc., p. 354; 12 C. J., p. 955, Sec. 485; Id., p. 969, Sec. 538.

This brings us to a consideration of the contention of the corporation to the effect that it is exempt from the provisions of Section 2 of the 1929 Act by virtue of the provisions of Section 23 thereof. In determining this matter it is proper that we construe the act in its entirety. When so construed it is evident that Section 23 only has application to the time within which existing corporations may comply with the same with reference to investments and deposits. This section does not even remotely treat of the amount of capital required, and is not intended to grant any exemption from the requirements of Section 2 stipulating a capital of $100,000.00. The only exemption from this requirement is contained in the same section that stipulates the $100,000.00 capital, that is, such concerns domiciled in counties of less than 10,000 population. It is admitted that this corporation is not domiciled in such a county. Furthermore we are of the opinion that had the Legislature intended to exempt corporations already in existence from the provisions of Section 2 requiring a capital of $100,000.00, such intention would have been plainly expressed. The evident and express purpose of Section 23 is to give existing companies six months within which to comply with the requirements of the act with reference to investments and deposits. In fact, the section plainly so states. This was necessary because it was evident that existing companies would probably have a large part of their funds invested in assets not admissible under the requirements of the act, and it was but proper that such existing companies be given a reasonable period within which to convert their non-admissible investments into the kind and character of assets prescribed by the act. Finally we hold that Section 23 not only does not exempt this company from the requirements of Section 2 with reference to having a capital stock of $100,000.00, but, on the contrary, expressly provides that "all cor-

porations heretofore incorporated and now doing business in Texas shall be permitted to continue in business and shall be subject to all of the provisions of this act," etc. We think it would be hard to express the legislative intent in plainer language.

For the reasons stated we recommend that the mandamus sought herein be in all things refused.

The opinion of the Commission of Appeals is adopted and mandamus refused.

*C. M. Cureton,* Chief Justice.