JAMES SHAW, BANKING COMMISSIONER, v. LONE STAR
BUILDING & LOAN ASSOCIATION

No. 6041. Decided May 16, 1934.
(71 S. W., 2d Series, 863.)

*James V. Allred,* Attorney General, *Everett L. Looney* and *Everett F. Johnson,* Assistants Attorney General, and *John W. Goodwin,* of Austin, and *Geo. F. Burgess,* of Dallas, for plaintiff in error.

The annulment of the certificate of authority of defendant in error to do business is not, as found by the Court of Civil Appeals, the exercise of a judicial power but is administrative and within the scope of the authority conferred upon the Banking Commissioner of Texas. Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Texas, 21, 52 S. W. (2d), 56; Glenn Falls Ins. Co. v. Hawkins, 103 Texas, 327, 126 S. W., 1114; Oglesby v. Durr, 173 S. W., 275; Sanders State Bank v. Hawkins, 142 S. W., 84; Kennedy v. State Board, 145 Mich., 241, 108 N. W., 730; Doyle v. Continental Ins. Co., 94 U. S., 535; Title 78 R. C. S., 1925; 34 C. J., 1180, sec. 5c.

The State, under its reserve and police powers, had a right through its Legislature to pass an Act fixing a maximum membership fee and make it, as it did, apply to plaintiff (defendant in error here), and such Act is not, therefore, retroactive as to it. Jefferson County Title Guaranty Co. v. Tarver, 119

Texas, 410, 29 S. W. (2d), 316; Mechanics Building & Loan Assn. v. Coffman, 110 Ark., 269, 162 S. W., 1090; St. John v. Iowa Business Men's B. & L. Assn., 136 Ia., 448, 113 N. W., 863, 15 L. R. A. (N. S.), 503; 2 Lewis Sutherland Stat. Const., 1185; 12 C. J., pp. 991-1038.

*Barkley & Webb,* and *Kenneth Krahl,* all of Houston, for defendant in error.

The Banking Commissioner was without authority under the law to cancel defendant in error's permit, or to take any action in that connection except by an action brought in the courts of the county where the association had its principal place of business, and prosecuted by the Attorney General. Texas Constitution, Art. 1, sec. 19; Wichita Electric Co. v. Hinckley, 131 S. W., 1192; Armstrong v. Traylor, 87 Texas, 598, 30 S. W., 440; Firbanks v. Hidalgo Co. Water Imp. Dist. No. 2, 261 S. W., 542; 12 C. J., 902.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

The Lone Star Building & Loan Association was incorporated under the pertinent provisions of Title 24, R. C. S., 1925, with a capital stock of $5,000,000 divided into shares of the par value of $50 each. At the time the Association was chartered there existed no statute regulating the amount of membership fees to be charged by a building and loan association.

After its incorporation this Association adopted a by-law providing for a membership fee of $2.50 per share. On February 12, 1929, the Association entered into a contract with one A. B. Elkon, by the terms of which Elkon was constituted the sole agent of the Association to sell its stock and memberships for a term of ten years. Also under this contract Elkon was to receive $2.25 out of each membership fee.

After the making of the contract with Elkon the 41st Legislature at its Second Called Session, enacted S. B. 111, Ch. 61. This is a very comprehensive Act, and contains many provisions regulating the incorporation and operation of building and loan associations. Section 45 of this Act, so far as applicable here provides:

"Membership Fee. No Association authorized to do business in this State is authorized to charge in excess of two per cent of the par or maturity value of each $100.00 share of stock as a membership fee," etc.

Section 29 of ch. 61, supra, contains the following provision:

"Sec. 29. Existing Associations. All Texas building and loan associations, now or hereafter organized, and all foreign associations, now or hereafter organized to do business in Texas, shall continue their corporate existence and power and be subject to the provisions of this Act in like manner as corporations which are incorporated hereunder."

After the Act of the 41st Legislature, which we will hereafter call the 1929 Act became effective this Association refused to obey its provisions regulating the amount to be charged for membership fees, and continued to charge the amount provided by its by-laws, $2.50 per share. This constituted a violation of the Act of 1929 but was not a violation of the law as it existed at the time this Association was chartered, or at the time it entered into the contract with Elkon.

The 1929 Act also contains the following provision, which is Section 13 thereof.

"Sec. 13. Illegal, Unauthorized, Unsafe, or Fraudulent Practices. Remedies. In case the Banking Commissioner of Texas shall find, upon examination or from other evidence, that any building and loan association is conducting its business, in whole or in part, contrary to law, or failing to comply with the law, that its assets are less than it liabilities, including all its capital stock, or is conducting its business in an unsafe, unauthorized or fraudulent manner, the Banking Commissioner of Texas shall, by an order in writing addressed to the President of such association, direct attention thereto and order compliance with the law, and that the assets be increased to equal liabilities, and in case such association shall refuse or neglect to comply with any such order lawfully made, or in case any such association is insolvent or in danger of insolvency, or its assets are impaired, then the Banking Commissioner of Texas shall annul its certificate of authority and may begin an action to revoke the charter of such association and for the appointment of a receiver thereof and the windinig up of its affairs. Any action begun under this Section shall be brought in the county where such association has its principal place of business, and in the name of the State of Texas on relation of the Banking Commissioner of Texas, and shall be prosecuted by the Attorney General."

Plaintiff in error, as State Banking Commissioner, formally notified this Association· that it would have to cease charging a membership fee of $2.50 per $50.00 share, and would have to conform to the provisions of Section 45 of the 1929 Act, supra, or he would cancel its permit to do business in this State, and take steps to forfeit its charter in the manner provided by law.

After receiving the above notification the Association instituted this suit in the District Court of Harris County, Texas, to enjoin the Banking Commissioner from cancelling its permit to do business in this State, and from taking steps to forfeit its charter. The venue of the case was moved to Travis County on plea of privilege filed by the Banking Commissioner. On final trial in the District Court of Travis County, judgment was rendered perpetually enjoining the Banking Commissioner from cancelling the Association's permit to do business. On appeal by the Banking Commissioner to the Court of Civil Appeals that court in all things affirmed the judgment of the district court. 40 S. W. (2d), 968. The Banking Commissioner brings error.

As we interpret its opinion the Court of Civil Appeals holds that this Association is entitled to the injunctive relief as here granted for the following reasons:

1. Because Section 13, ch. 61, Acts 1929, supra, as worded only authorizes the Banking Commissioner to annul a building and loan association's permit to do busness in this State after a court action in the name of the State.

2. Because if Section 13 of ch. 61, supra, be construed as authorizing the Banking Commissioner to annul a building and loan association's permit to do business in this State without a court action it is unconstitutional and void as an attempt to confer judicial powers on an executive officer of the State.

3. Because if Section 13 of ch. 61, supra, be construed as authorizing the Bankinig Commissioner to annul a building and loan association's permit to do business in this State without a court action it is unconstitutional and void as to this association because it deprives it of property and property rights without due process of law.

4. Because the provisions of Section 45 of ch. 61, supra, fixing a maximum membership fee to be charged by building and loan associations in this State cannot be applied to this association so as to impair or destroy its contract with Elkon made before the law limiting the amount of such fee became operative.

■ So far as applicable to this case Section 29 of the 1929 Act makes it plain that the regulations provided by that Act are intended to apply to all building and loan associations, whether chartered under such Act or prior thereto.

It is plain that the provisions of Section 45 of the Act of 1929 make it unlawful for any building and loan association to charge a membership fee in excess of two per cent of the

par or maturity value of each $100.00 share of its stock. It therefore follows that this Association was certainly conducting its business contrary to law, and was failing to comply with the law, when it continued to charge a membership fee in excess of two per cent of the par or maturity value of its stock after the Act of 1929 became effective.

A reading of Section 13 of the 1929 Act discloses that it makes it the duty of the Banking Commissioner, when he shall find, "upon examination or from other evidence, that any building and loan association is conducting its business, * * * contrary to law, or failing to comply with the law," to "by an order in writing addressed to the president of such association, direct attention thereto and order compliance with the law, * * * *, and in case such association shall refuse or neglect to comply with any such order lawfully made, * * *, then the Banking Commissioner shall annul its certificate of authority, and may begin an action to revoke the charter" etc. It will be noted that this section of the 1929 Act expressly provides that, *"the Banking Commissioner shall annul its certificate of authority,"* if he finds that the association is conducting its business contrary to law, or is failing to comply with the law. It is then provided that he, the Banking Commissioner, may begin an action to revoke the charter of the association, and for the appointment of a receiver, etc. Clearly, the statute means to say that the annulment of the permit to do business must be accomplished by the action of the Banking Commissioner without any court action, but in case it is desired to forfeit the charter, etc., the courts must be resorted to.

■ It is held by the Court of Civil Appeals that Section 13 of the 1929 Act should not be given the construction that it authorized the Banking Commissioner to annul a permit to do business in this State without a court action because such a construction would render the Act unconstitutional as in violation of Section 19 of Article 1, and Section 1, Article 5 of our State Constitution. We think this holding is error for two reasons, first, because the very wording of the Act will permit of no other construction, and second, because such construction does not render the Act violative of either of the above constitutional provisions.

Section 19 of Article 1 of our Constitution, is the due course of the law provision. Section 1 of Article 5 is the provision vesting the judicial powers of this State in its courts. Of course, if the provisions of Section 13 of the 1929 Act, supra, authorizing the Banking Commisioner to annul a permit of a

building and loan association to do busness in this State, authorizes a judicial act by the Banking Commissioner, who is an executive or administrative officer, it violates Section 1 of Article 5 of our Constitution. Furthermore if it violates Section 1 of Article 5, it follows that it also violates Section 19 of Article 1. On the other hand, if Section 13 of the Act does not violate Section 1 of Article 5 of our Constitution, it follows that it does not violate Section 19 of Article 1 thereof. This is because if the law authorizes the cancellation of the permit to do business does not violate the judicial provisions of our Constitution, it does not violate the due course of the law provisions.

■ In connection with the above it is settled by practically universal authority that executive or administrative officers cannot exercise purely judicial authority. Such is certainly the rule in this State. Furthermore, such officers cannot interfere with the courts in the exercise of the judicial functions of the government. On the other hand a preliminary fact finding may be vested in an executive or administrative officer. 12 C. J., p. 900, et seq. and notes. In this connection when an executive or administrative officer is required to perform certain acts when certain facts exist, he must of necessity ascertain and pass on the facts before he can know how or when to govern his acts. This is sometimes called a quasi judicial function. There is a marked distinction between an act that is quasi judicial and one that is classed strictly as judicial. The vesting of quasi judicial authority in an executive or ministerial officer does not violate the judicial provisions of our Constitution. 34 C. J., p. 1180 et seq. and notes. If this were not so the government could hardly function. All executive and administrative officers are enjoined or required to perform certain duties under certain circumstances and conditions. They cannot know when or how to perform until they have ascertained the facts.

In this connection we think our Supreme Court has already passed on and decided the exact question being discussed here. Glens Falls Insurance Co. v. Hawkins, 103 Texas, 327, 126 S. W., 1114. In the Glens Falls case this court had before it for construction a statute governing insurance companies doing business in this State. That statute contained the following provisions:

"(3) Any insurance company authorized to transact the business of fire, fire and marine, marine and inland insurance in this state failing to comply with the provisions of this act

shall forfeit its authority to do such business for a period of one year, and it is hereby made the duty of the Commissioner of Agriculture, Insurance, Statistics and History to investigate any complaint as to violation of said Act; and upon satisfactory proof that any company authorized to transact the business of fire, fire and marine, marine and inland insurance in this state has violated the provisions of this act, the said Commissioner shall revoke the certificate of authority of the offending company."

In passing on the above statute this Court, speaking through Judge Brown, said:

"* * * The policy for enacting the law, whether good or bad, was a question for the Legislature, and the courts cannot consider it. The Commissioner is empowered to revoke the existing permit when an insurance company violates the law, and may refuse to grant a permit for the same reason."

A reading of the Act construed in the Glens Falls Insurance Company case, supra, conclusively shows that it did not contemplate a court action to revoke the permit there mentioned. In spite of this the Act was upheld by this Court. The Act in the Glens Falls case made it the duty of the Commissioner "to investigate any complaint as to violation of said Act; and upon satisfactory proof that any company authorized to transact business, * * * in this State has violated the provisions of this Act, the said Commissioner shall revoke the certificate of authority of the offending company." Section 13 of the 1929 building and loan association Act legally does exactly what the Act in the Glens Falls case did. It authorizes the Commissioner to ascertain the facts, and then compels him to annul the permit if he finds the Association is continuing after notice to conduct its business in violation of law, or is refusing to obey the law. In this connection it is not even contended on the part of this Association that it is obeying the 1929 Act now in force.

Again we think our Supreme Court has already passed on and decided the question under consideration here in the case of Federal Crude Oil Company v. Yount-Lee Oil Company, 122 Texas, 21, 52 S. W. (2d), 56. In that case this court had before it for construction Article 5243 i, R. C. S., 1895, as contained in ch. 104, p. 141, Acts Regular Session, 25th Legislature, 1897. That Act provided certain franchise taxes to be paid each year by corporations. The amount of the tax was graduated according to the amount of the corporation's capital stock. The Act contained some other provisions not germane here. It then provided:

"* * * And any corporation which shall fail to pay the tax provided for in this article, at the time specified herein, shall, because of such failure, forfeit its right to do business in this State, which forfeiture shall be consummated without judicial ascertainment by the Secretary of State entering upon the margin of the ledger kept in his office relating to such corporations, the word 'Forfeited,' giving the date of such forfeiture; and any corporation whose charter may be thus forfeited shall be denied the right to sue; provided, in any suit against such corporation, on a cause of action arising before such forfeiture, no affirmative relief may be granted to such defendant corporation, unless its charter is revived, as provided in Article 5243 j."

It will be noted that the above Act expressly provided that the permit to do business should be forfeited by the Secretary of State without judicial ascertainment by a simple entry on his records. The Act of 1897 was very drastic; not only did it forfeit the permit to do business, but, under its provisions, the Courts of this State were closed to a corporation whose permit had been forfeited. In spite of all this the Supreme Court expressly upheld the Act as valid in every particular.

In Sanders State Bank v. Hawkins et al., 142 S. W., 94 (Civ. App. writ refused), the Court of Civil Appeals had before it for construction Section 40, ch. 10, Acts 29th Legislature, 1st C. S., 1905, p. 489. That Act provided:

"If from an examination made by the Superintendent, or by one of his examiners, it shall be discovered that any bank or trust company organized under this act is insolvent, or that its continuance in business will seriously jeopardize the safety of its depositors or other creditors, and if the action is taken from an examination by an examiner such examiner shall recommend the closing of the bank, then it shall be the duty of the Superintendent, if he approves such recommendation, by himself or one of his examiners, immediately to close said bank or trust company, and take charge of all the property and effects thereof, etc."

The Commissioner acted under the above statute, closed the above bank and took charge of its properties and effects. The opinion clearly upholds the law as valid. We might multiply these authorities but we think enough has been said to demonstrate that Section 13 of the Act under consideration here is not unconstitutional as in violation of Section 1 of Article 5 of our Constitution. This being true it is not in violation of Section 19 of Article 1.

■ This brings us to the question as to whether Section 45 of the 1929 building and loan act is inoperative as to this association on account of its contract with Elkon.

Our Constitution provides, Section 1 of Article 12, that no private corporation shall be created, except by general law. Section 2 of Article 12 of our Constitution provides, in effect, that the Legislature shall enact general laws providing for the creation of private corporations. This section of the Constitution then expressly provides that such laws shall provide fully for the adequate protection of the public and the stockholders. Also many years before this Association was incorporated the Legislature of this State enacted what is now Article 1318, R. C. S. of Texas, 1925. That statute reads as follows:

"Art 1318. Legislative Authority. All Charters or amendments to charters, under the provision of this chapter, shall be subject to the power of the Legislature to alter, reform or amend the same."

It is the settled law that the constitutional and statutory laws of this State in force when a corporate charter is granted are parts of such charter, though not expressly incorporated therein. Jefferson County Title & Guaranty Co. v. Tarver (Com. App. opinion adopted), 119 Texas, 410, 29 S. W. (2d), 316.

Under the provisions of Article 1318, supra, the charter of all corporations are granted with the power reserved in the State to altar, reform or amend them. This rule certainly leads to the conclusion that the State had the power to enact the law here under consideration regulating the amount to be charged as membership fees by building and loan associations doing business in this State. Jefferson County Title & Guaranty Co. v. Tarver, supra. It follows that the State's reserved power in the premises cannot be contracted away in the manner here contended for by the Association.

■ The Association seems to contend that Section 41 of the Act of 1929 is unconstitutional as to it. That section reads as follows.

"Sec. 41. Operating Contracts. No building and loan association may hereafter make an operating or management contract with any person except with the express approval and consent of the Banking Commissioner of Texas, nor shall any existing contract be extended, renewed or transferred without such consent and approval. But nothing herein shall be held to validate or invalidate any existing contract."

There is nothing in the above quoted statute to render it

antagonistic to any provision of our Constitution. It simply requires all operating or management contracts to be approved by the Banking Commissioner. It then, in legal effect, expressly leaves the effect of such provision to be determined by the general applicable rules of law.

The judgments of the Court of Civil Appeals and district court are both reversed, and judgment here rendered dissolving all injunctions herein granted against the Banking Commissioner.

Opinion adopted by the Supreme Court, May 16, 1934.