

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

AUSTIN 11, TEXAS

~~WILL WILSON~~
~~ATTORNEY GENERAL~~

Hon. Walter C. Woodward
Chairman of the Board
Hon. R.G. Waters
Casualty Ins. Commissioner
Board of Insurance Com-
missioners
Austin, Texas

Opinion No. O-1788
Re:  Is Article 1302a of the
"Title Guaranty Law" applicable to
an extension agreement with regard
to a policy which had been issued
before the enactment of the said
"Title Guaranty Act".

Dear Sirs:

Your letter requesting an opinion has been received
and considered by this department.

As a necessary preliminary to a correct understanding
of the question presented we quote as follows from your request:

" * * *

"The Pioneer Abstract and Guarantee Title Company is
a corporation organized in 1919 under Sec. 57 of Article
1302, Revised Civil Statutes, 1925, and has never been au-
thorized to write title insurance under Article 1302a.
Prior to the passage of the title act, mortgagee policies
were issued containing the following provision:

"'* * * Payment, discharge or satisfaction of the
said indebtedness secured by the said instruments, except
by foreclosure or the extension of said indebtedness or any
part thereof without the consent of the company shall fully
terminate, avoid and annul this policy and all liability of
the company hereunder.'

"We request your opinion on the following questions:

"1.  Is the Pioneer Abstract and Guarantee Title Com-
pany acting in violation of Article 1302a, Section 3, in
offering to extend policy Re-2871, issued prior to the pass-
age of the title act to cover refinancing of loan, (a) if
period of extension does not exceed the original maturity
of the policy; (b) if policy is extended for period extend-
ing beyond the original maturity date?

"2.  If the Pioneer Abstract and Guarantee Title Com-
pany is within its rights in extending policy to cover re-
financing, is company acting in violation of Section 3,

Article 1302a in charging a fee?

"3.   Is it required that fee for such extension be calculated on schedule of premiums promulgated by the Board of Insurance Commissioners now in effect?

"4.   Does the Board of Insurance Commissioners have authority under Section 24, Article 1302a, to prohibit such practice, and what procedure should be followed?"

The Act under consideration is commonly known as the Texas "Title Guaranty Law", being Chapter 40, p. 77, Acts 1929, Forty-first Legislature (R.S.) and codified as Article 1302a in Vernon's Annotated Revised Civil Statutes.  The Act, after making provision for incorporation under the terms thereof, provides, insofar as applicable here, in Section 3 as follows:

"Corporations so formed as well as foreign Corporations and those created under Subdivision 57, Article 1302 of the Revised Statutes of 1925, or under Chapter 18, Title 78, Revised Statutes of 1925, or any other law insofar as the business of either may be a title insurance business, shall operate in Texas under the control and supervision and under such uniform rules and regulations as to forms of policies and underwriting contracts and premiums therefor, as may be from time to time prescribed by the Board of Insurance Commissioners of Texas; and no Texas or foreign corporation whether incorporated under this Act or any other law of the State of Texas shall be permitted to issue any title policy or mortgage certificate or underwriting contract on Texas property other than under this Act and under such rules and regulations.  No policy of title insurance or guarantee of any character on Texas titles shall be issued or valid unless written by a corporation complying with all provisions of and authorized or qualified under this Act.  ***

"The Board of Insurance Commissioners shall have the right and it shall be its duty to fix and promulgate the rates to be charged by corporations created or operating hereunder for premiums on policies or certificates and underwriting contracts.  ***"

The pertinent portion of Section 20 of said Act is as follows:

"If any corporation, domestic or foreign, while holding a certificate of authority to transact business in this State, shall fail or refuse to comply with any of the provisions or requirements of this Act, the Board of

Insurance Commissioners, upon ascertaining this fact, shall notify such company by actual notice in writing delivered to an executive officer of such company, of his intention to revoke its certificate of authority to transact business in this State at the expiration of thirty days after the mailing of such registered letter, or the date upon which such actual notice is served. If such provisions or requirements are not fully complied with upon the expiration of said thirty days, it shall be the duty of said Board to revoke the certificate of authority of such company. ***"

Further, Section 24 of the Act provides that:

"The terms and provisions of this Act are conditions upon which corporations doing the business provided for herein may continue to exist, and failure to comply with any of them or a violation of any of the terms of this Act shall be proper cause for revocation of the permit and forfeiture of charter of a domestic corporation or the permit of a foreign corporation."

The rules and regulations announced by this Act became effective on June 1, 1931.

We also consider the following constitutional and statutory provisions germane to a proper consideration of your question.

Art. 12, Sec. 1.   "No private corporations shall be created except by general laws."

Art. 12, section 2.   "General laws shall be enacted providing for the creation of private corporations, and shall therein provide fully for the adequate protection of the public, and of the individual stockholders."

As necessary to his opinion, we also quote Article 1318, R.C.S., 1925:

"All charters or amendments to charters under the provisions of this chapter, shall be subject to the power of the Legislature to alter, reform or amend the same."

The rule of law applicable to the situation now confronting us, in our opinion, is correctly stated in 17 R.C.L. 476, 477, section 5 as follows:

"....Following the general principle that a license is not a contract, it is clear that it does not in itself create any vested right, or permanent right, and that free latitude is reserved by the Legislature to impose new or

additional burdens on the licensee, or to alter the li-
cense, or to revoke and annul it.  And this is the general
rule....regardless of whether the term for which the li-
cense was given has expired...."  To the same effect, see
also Daniel v. Tyrrell & Garth Investment Company, 127 Tex.
213, 93 SW 2nd 372, Jefferson County Title Guaranty Co. v.
Tarver, 119 Tex. 410, 29 SW 2nd 316, Shaw v. Lone Star Bldg.
& Loan Association, 123 Tex. 373, 71 SW 2nd 863, Lloyds of
Texas v. Bobbitt (C.C.A.) 40 SW 2nd 897.

The Supreme Court of Texas speaking in the case of
Daniel v. Tyrrell & Garth Investment Company, supra, which in-
volved the construction of Article 1302a (supra) said:

"Every corporate charter issued by this State is issued
with the power reserved in the state to 'alter, reform or
amend ' it.  Citing Article 1318, supra, and commenting that
the power reserved in the state to 'alter, reform or amend'
charters cannot be contracted away by the corporation."

Continuing with its decision, the court said:

"It is contended by (the plaintiff) that the rules and
regulations promulgated by the board, by authority of a law
which became effective after the contract between it and the
title company was entered into, cannot be applied so as to
affect such previous contract.  We overrule this contention.
The police power of the state to regulate the business of
title insurance, as to forms of contracts and rates, cannot
be contracted away by the title company."  Citing Shaw v.
Lone Star Bldg. & Loan Association, 123 Tex. 373, 71 SW 2nd
863.  (Parenthetical insertion ours).

An extension of an interest bearing agreement is a valid
contract.  See 1 Williston on Contracts, Section 122 (Revised Edi-
tion).  Also, the case of Benson v. Phipps, 87 Texas 578, by
Gaines, C. J.

Here, you are respectfully advised that under the au-
thorities cited above, it is our opinion, that all private corpor-
ations, chartered by this State, assuming to write title insurance
must comply with the provisions of Article 1302a, V.A.C.S.  In
entering into all title insurance contracts, a corporation must
take cognizance of, and act according to, all those rules and
regulations which are, and may be, prescribed by the Board of In-
surance Commissioners pursuant to that authority vested in them
by the terms of the Act.  Such compliance is in the nature of a
condition precedent to the validity of any title insurance agree-
ment which said corporation might enter into.  This is applicable

to all contracts, pertaining to title insurance, bearing a date subsequent to that date which marked the effectiveness of the "Title Guaranty Act". The mere fact that a contract is an extension agreement will not afford grounds for any possible exemption from the plain and unambiguous provisions of that Act.

We believe that the answers to your Nos. 1, 2 and 3 questions are apparent from the foregoing and require no further elucidation. In reply to your fourth question, we direct your attention to sections 20 and 24 of Article 1302a, which, for your convenience, are set out herein.

Trusting that the foregoing satisfactorily answers your questions, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Wm. J. Fanning
Wm. J. Fanning, Assistant

By /s/ Grundy Williams
Grundy Williams

GW:AW:wb

APPROVED FEB 2, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:       BWB, CHAIRMAN