**J. M. FALKNER, Banking Commissioner of Texas, Appellant,**

v.

**SOUTHWESTERN SAVINGS AND LOAN ASSOCIATION OF HOUSTON, Texas, Appellee.**

No. 10646.

Court of Civil Appeals of Texas.

Austin.

Oct. 29, 1958.

Rehearing Denied Jan. 7, 1959.

Will Wilson, Atty. Gen., C. K. Richards, Asst. Atty. Gen., Thomas Black, John W. Stayton, Special Asst. Attys. Gen., for appellant.

Powell, Rauhut, McGinnis & Reavley, Austin; Roberts, Baker, Richards, Elledge & Heard, Houston, for appellee.

GRAY, Justice.

Southwestern Savings and Loan Association of Houston, Texas, brought this suit against J. M. Falkner, Banking Commissioner of the State of Texas, and prayed for a declaratory judgment decreeing that it may open branch offices without first obtaining the approval of the Commissioner, and for an injunction restraining the Commissioner from taking any action to prevent it from opening and operating branch offices.

By his answer the Commissioner affirmatively claimed statutory authority to require his approval prior to the opening of branch offices, and further alleged the promulgation of rules and regulations requiring the prior approval of the Commissioner for the opening of branch offices of State building and loan associations.

At a nonjury trial judgment was rendered denying the declaratory judgment prayed

for in part but finding that "there was no prohibition in the statutory provisions, legal restrictions and other laws of the State of Texas against the plaintiff opening a branch office or branch offices * * * without obtaining the prior approval of the Banking Commissioner of the State of Texas;" and holding that "upon the abovementioned rules and regulations being adopted the Plaintiff became bound to obtain the prior approval of the State Banking Commissioner before opening any branch office other than the six branch offices mentioned specifically in this judgment" and enjoining the Commissioner from interfering with the opening of six branch offices by Southwestern.

Southwestern has appealed from that part of the trial court's judgment denying a declaratory judgment and the Commissioner has appealed from that part of the judgment granting injunctive relief and also complains of findings made by the trial court.

The facts show that Southwestern is a building and loan association incorporated and existing under the laws of Texas with its office and principal place of business located at 3401 South Main Street, Houston, Texas. It desired to open five branch offices in the City of Houston and one in the adjoining suburb of Bellaire and by letter dated December 30, 1953, and presented to the Commissioner on January 7, 1954, it notified the Commissioner of its intention to open such branch offices and gave their proposed locations.

At the time of the trial one of such offices had been opened and commitments for opening the others had been made.

This suit was filed December 10, 1957 and on January 29, 1958 rules and regulations were promulgated and adopted requiring the approval of the Commissioner prior to the opening of branch offices of building and loan associations. The rules provided that an application shall be filed for permission to open additional public offices which shall state:

"* * * the need therefor; the functions to be performed; the personnel and office facilities to be provided; the estimated annual volume of business, income and expenses of such additional public office; and shall be accompanied by a proposed annual budget of the applying association."

The rule then provides that the application shall be set for hearing, notice given as is provided for new charter applications and further provides that the application shall not be granted unless the Commissioner shall affirmatively find stated requirements.

The trial court held that the above rules were valid and binding on Southwestern after their effective date but that because Southwestern had opened or had made substantial commitments for opening the proposed offices prior to January 29, 1958, said rules had no application to such proposed offices. The judgment was entered July 1, 1958.

Southwestern complains that the trial court erred in holding that the Commissioner had authority to promulgate rules requiring building and loan associations to obtain prior approval of the Commissioner before opening public offices other than its home office.

Art. 881a, Vernon's Ann.Civ.St., is applicable to the questions here presented. Sections of that Article are numbered from 1 to 69 both inclusive, and we will refer to the sections which in our opinion control our decision.

Sec. 2 provides that when a proposed charter, or articles of association, for a building and loan association has been filed if it appears to the satisfaction of the Commissioner that the minimum capital required has been paid in cash then he shall determine:

"* * * whether the character, responsibility and general fitness of the persons named in the articles of incorporation are such as to command

confidence and warrant belief that the business of the proposed building and loan association will be honestly and efficiently conducted in accordance with the intent and purpose of this Act, and whether the public convenience and advantage will be promoted by allowing such proposed building and loan association to be incorporated and engaged in business, and whether the population in the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate support for the proposed building and loan association."

The Section then provides that if the Commissioner is satisfied concerning the matters above specified that he shall issue a certificate to the association which shall then become a body corporate and authorized to exercise powers not inconsistent with the provisions "of this Act." However before engaging in business by-laws must be adopted and approved by the Commissioner and the association must secure a certificate of authority to do business from the Commissioner under Section 4.

If the Commissioner is not satisfied "that it is expedient and desirable to permit such proposed building and loan association to engage in business" then under Section 3 he shall refuse the application.

Section 7 provides that the Commissioner shall have the supervision over and control of all State building and loan associations and charges him with the execution of the laws of the State relating to such associations.

Other sections provide for the making of reports to the Commissioner by associations, examinations of them by him, keeping of books and accounts by them, authorize the Commissioner to cause the correction of illegal, unauthorized, unsafe or fraudulent practices of the association on penalty of the association's certificate of authority being annulled. Other sections deal with matters not of controlling importance here.

The sections above quoted from and referred to clearly show that it was the intent of the Legislature to promote the public convenience and advantage in authorizing building and loan associations to engage in business in this State and to accomplish and insure this purpose the Commissioner was vested with the powers and the authority set out in the laws relating to these organizations and the conduct of their business.

"It is the settled law that the constitutional and statutory laws of this state in force when a corporate charter is granted are parts of such charter, though not expressly incorporated therein." Shaw v. Lone Star Building & Loan Ass'n, 123 Tex. 373, 71 S.W.2d 863, 867.

Southwestern's charter was approved and its certificate of authority to do business was issued and both were accepted on the conditions named in the statutes. The Commissioner's action in approving the charter and issuing the certificate of authority was founded, in part at least, on his findings that the public convenience and advantage would be promoted by allowing Southwestern to engage in business at 3401 South Main Street, Houston, and that the population in that neighborhood and in the surrounding country afforded a reasonable promise of adequate support for it. In making these findings the Commissioner surveyed the designated location and was not called upon to survey locations not specified but where future public offices may be located.

It is quite evident that the Commissioner could not perform the duty of supervising and controlling Southwestern and execute the laws relating to it without being afforded the opportunity to approve or disapprove the place where it conducted business. In Von Rosenberg v. Lovett, Tex. Civ.App., 173 S.W. 508, 514, Er. ref., the Court considered the meaning of a statute which made it the official duty of the board

of equalization "to supervise the assessment of their respective counties." The Court said: "To supervise does not mean to do the work in detail, but to see that it is done. It means to oversee, with power of direction." In Smithson v. Callahan, 78 U.S.App.D.C. 355, 141 F.2d 13, 14, the Court considered the meaning of "supervision" used in a local court rule requiring the trustee administering an estate under the supervision of the court to file reports, etc. The Court said that supervision "implies a duty in the trustee to consult the court before taking action." When the word "control" is placed in company with "supervision" as it is in Section 7, supra, it appears certain that the Legislature has made it the duty of the Commissioner to exercise "a directing, restraining and governing influence over" Southwestern, and that the establishment and operation of branch offices come within such supervision and control.

It is our opinion that the Commissioner's approval must be obtained by State building and loan associations prior to the opening of additional public offices for the transaction of their business. It is also our opinion that the rules promulgated and above referred to are valid and binding from and after January 29, 1958. These rules do no more than prescribe requirements for securing the Commissioner's approval for opening additional public offices.

▮ Southwestern says that an interpretation of Section 7 such as we have given it would make the section unconstitutional. We do not agree. The powers and privileges accruing to Southwestern are derived from constitutional and statutory provisions. Section 2 of Art. 12 of our Texas Constitution, Vernon's Ann.St., provides:

"General laws shall be enacted providing for the creation of private corporations, and shall therein provide fully for the adequate protection of the public and of the individual stockholders."

The Legislature by enacting the provisions of law above mentioned has undertaken to comply with this mandate of our Constitution and in protecting the public and the stockholders has not violated it.

Southwestern has not, and we are unable to, place a finger on any provision of the Constitution that has been violated.

"When a judge pronounces a law to be contrary to the constitution, he must be able to put his finger upon the provision of that instrument which prohibits the act, or from which the prohibition necessarily arises. We find in the constitution no such language, nor do we find any provision from which such prohibition can be fairly implied." Harris County v. Stewart, 91 Tex. 133, 41 S.W. 650, 656.

The building and loan statute (Art. 852 et seq. Vernon's Ann.Civ.St.) has been held constitutional. Standard Savings & Loan Ass'n v. Davis, Tex.Civ.App., 85 S.W.2d 333. Er. ref.

▮ It is our opinion that the trial court was correct in denying the declaratory judgment prayed for by Southwestern and in decreeing that the promulgated rules supra were valid from and after their date. The holding of the trial court that such rules did not apply to the proposed branch offices is not disturbed. In order to support this holding of the trial court it is necessary to treat the letter above referred to as an application by Southwestern for permission to open public offices. The trial court apparently so treated the letter and we do the same. This however does not relieve Southwestern of the duty of securing the approval of the Commissioner for the opening of such public offices.

It is our further opinion that the trial court erred in granting the injunction complained of by the Commissioner, accordingly it is dissolved.

What we have said renders unnecessary a consideration of findings made by the trial

court and complained of by the Commissioner.

The judgment of the trial court is in part affirmed, in part reversed and the injunction restraining the Commissioner from taking any action to prevent Southwestern from opening six proposed branch offices is dissolved.

Affirmed in part, reversed in part and injunction dissolved.

HUGHES, J., not sitting.

On Appellee's Motion for Rehearing

GRAY, Justice.

In its motion for rehearing appellee says that we erred in our original opinion and presents ten assignments. What we said in our opinion is sufficient to dispose of all these assignments except the fifth which is that we

"erred in failing to hold that the departmental construction of the statutes was to the effect that prior approval of the Banking Commissioner was not necessary in that the evidence clearly shows that the departmental construction was to the effect that the Commissioner's prior approval was not necessary, and in that the Legislature having amended the law on numerous occasions during the time of the existence of such departmental construction did not change it, and thereby incorporated such construction into the statute."

We will however further notice appellee's argument that our construction of section 7 of Art. 881a would make the section unconstitutional.

Appellee says in its motion that:

"* * * since the Banking Commissioner has approved the opening of these branch offices, Southwestern has a right to establish and operate said branch offices."

If this statement be correct it would appear that this court is doing a useless thing in deciding whether such approval is required. However we will here concern ourselves with the questions noted supra.

In the "Statement" in appellee's motion for rehearing, signed by the Honorable Dow H. Heard, it says:

"Counsel for Appellee Southwestern filed on Tuesday afternoon, October 28, 1958, its 52-page Reply Brief to Brief for Appellant. The opinion of the Honorable Court of Civil Appeals was handed down early Wednesday morning, October 29, 1958, and reproduced copies thereof were mailed to the parties of record on that date. Further, on Tuesday, October 28, 1958, Appellant's Reply Brief of some 25 pages was also filed.

"It struck counsel for Appellee Southwestern with some peculiarity and substantial force that the opinion of the Honorable Court of Civil Appeals was handed down so promptly after the receipt of the Reply Brief filed by Appellee."

We think it should not have required much concentrated thinking to conclude that our opinion was prepared, examined and approved prior to the filing of the reply brief and that after it was filed we did not see fit to change our decision.

This court has been most liberal in allowing parties to file briefs and replies. Here appellee's motion for rehearing was filed November 13, 1958. On November 26, it filed a "Further Exposition of Appellee's Motion for Rehearing" and on December 12 it filed its reply to appellant's reply to appellee's motion for rehearing which was filed December 3, 1958. Thus it appears that the motion for rehearing is sufficiently presented for our disposition.

In our consideration of assignment five supra we are concerned with the statutes dealing with the Commissioner's supervision and control of State chartered build-

ing and loan associations. In our original opinion we discussed sections 2 and 7 of Art. 881a. Here we will also notice Art. 342–114, Vernon's Ann.Civ.St. (cited by appellee) giving to the Building and Loan Section of the Finance Commission of Texas authority to promulgate general rules and regulations applicable to State associations.

Reference to Vernon's Annotated Civil Statutes shows that Sec. 2 supra, was enacted in 1929 by the 41st Legislature at its second called session and that it has not since been amended. Section 7, supra, was first enacted in 1929 by the same Legislature that enacted section 2. It was amended in 1939 and again in 1943 and has not since been amended. Art. 342–114 was enacted in 1943 and has not been amended. Sections 24 and 35 of Art. 881a, Acts 55th Leg., p. 1319, Chapter 445, were amended in 1957 but those sections and their amendments are not relevant to the inquiry here.

In its motion appellee says:

"When the legislature re-enacted the statute on many occasions, or amended it in small particulars, it did so with the full knowledge of the departmental construction then in existence. Therefore, the Legislature incorporated the departmental construction into the statute itself."

Appellee argues that the Commissioner testified that in his opinion his approval was not required for the establishment of branch offices. We will concern ourselves with what the record shows has been done by the Department that may or may not constitute departmental construction of the question before us.

The present Commissioner whose testimony is referred to supra on February 6, 1952, by letter from the attorney for the Banking Department, was advised in part as follows:

"Now, it is not a matter of discretion with you as Banking Commissioner as to allowing branch offices out of analogy. The prohibition of places of business as to banks is a fundamental or constitutional one. Whereas, the provision for the place of business for the building and loan associations is purely one of statute.

"From these considerations I am of the opinion a state chartered building and loan association may have one or more branch offices at which to carry on its business, which such offices need not be mentioned by location in the articles of association."

This letter then went on to say:

" * * * Where an association does have a branch or branches, it should report their establishment forthwith to this Department as an essential incident to its supervisory powers."

The letter concluded by stating that a "very perplexing question" might arise where the branch office in truth becomes the principal place of business "conceivably outside of the city or even county where the original principal place was located, * * *" Prior to this letter (which was after the amendments supra) no departmental construction is shown. The letter itself disputes that there was a departmental construction prior to that date. Appellee relies on this letter to establish its claimed departmental construction.

The Commissioner testified, by deposition, that after the above letter he took further steps to get advice as to his right to act on applications for branch offices for State chartered building and loan associations, and that on February 24, 1956 and November 4, 1956, he received advice from the Attorney General. These opinions were introduced in evidence and show that the advice to the Commissioner was that he should make his own investigation and determine whether the convenience and advantage of the public will or will not be served.

After the above letter of February 6, 1952 supra the Commissioner approved applications to establish branch offices at least on the following dates: March 11, 1952, which approval was cancelled by the Commissioner on October 23, 1952; March 25, 1952; April 24, 1953 and November 30, 1956.

On March 11, 1957, the Attorney General, in response to a request by the Commissioner, rendered an opinion that approval by the Department of Banking was necessary for the opening of branch offices by State chartered building and loan associations.

Appellee's point five supra cannot be sustained because there has been neither a long continued or a well settled departmental construction "to the effect that prior approval of the Banking Commissioner was not necessary" for the opening of branch offices. This being true the question of legislative re-enactment of statutes in conformity with departmental construction is not presented.

■ To sustain appellee's argument that there has been a departmental construction that the Commissioner's prior approval is not required for the opening of branch offices the following must appear: (1) the statute in question must be ambiguous and be susceptible of more than one construction, and (2) that the agency charged with the duty of administering it has given it a practical interpretation. If this interpretation is shown to be long continued and uniform, it is to be given weight by the courts. Texas Employers' Ins. Ass'n v. Holmes, 145 Tex. 158, 196 S.W.2d 390, 395. In any event appellee has failed to establish requirement (2). The evidence negatives interpretation by the Commissioner.

■ If it be argued that the failure of the Legislature to amend the applicable statutes subsequent to the letter of February, 1952, supra is legislative approval of the construction of the statutes given by that letter, then the answer to the argument is that there is no evidence in this record and no indication that the Legislature ever had the letter before it. Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 431, 75 S.Ct. 473, 99 L.Ed. 483, 490, citing cases.

Our holding that section 7 of Art. 881a gives the Commissioner supervision and control of branch offices, prior approval of their location and authority to promulgate rules with reference to applications for their opening is challenged by appellee with the argument that our construction of the section renders it unconstitutional as a delegation of law making power.

In 42 Am.Jur. p. 334, Sec. 43 at page 336, it is said:

"In considering the true test as to whether a power is strictly legislative or whether it is administrative and merely relates to the execution of the law, the true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and the conferring of authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

Appellee does not appear to argue that the Commissioner does not have authority to promulgate rules as to the powers conferred on him by statute but says that the power of supervision and control over associations does not include the authority to require prior approval for opening branch offices, and further says that the act does not contain any standards by which such authority is to be exercised.

The rules set out the standards governing the applications and the findings to be made at the hearing. These are substantially the same as set out in section 2.

If appellee's argument was sustained the effect would be to permit an association to

obtain permission from the Commissioner to open its principal office at a given location, then open a branch office at another location and proceed to conduct its principal business, or even all of its business, there. In this manner the "very perplexing question" mentioned in the letter of February, 1952, would arise and the supervision and control of the Commissioner would be defeated. In this manner the enforcement of the provisions of Art. 881a would be rendered impossible. Such a construction of the statute should not be adopted. Davis v. Estes, Tex.Com.App., 44 S.W.2d 952. Thereby building and loan associations would be enabled to defeat the purpose of the statute. Smith v. Texas Co., Tex.Com. App., 53 S.W.2d 774.

Appellee's motion for rehearing is overruled.

Motion overruled.

HUGHES, J., not sitting.