

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

April 6, 1988

Mr. Kenneth W. Littlefield
Commissioner
Texas Department of Banking
2601 N. Lamar Blvd.
Austin, Texas   78705

Opinion No. JM-886

Re:   Constitutionality   of
article 342-803a, V.T.C.S.,
which permits  the sale  of
the assets of a  bank with-
out shareholder approval in
certain circumstances
(RQ-1252)

Dear Mr. Littlefield:

You ask our  opinion about  the constitutionality  of
article 342-803a, V.T.C.S., a recent addition to the Texas
Banking Code.   You note that the provision is designed  to
facilitate so-called "open bank assistance" schemes under-
taken by the Federal Deposit Insurance Corporation  (FDIC)
to prevent the closure and liquidation of failing banks in
Texas.   An "open bank assistance" transaction permits  the
FDIC to undertake  a variety  of measures  to prevent  the
outright closure of a bank insured by it, including making
contributions to a prospective  purchaser who may buy  the
assets  of  a  failing  bank.   See generally  12  U.S.C.
§1823(c).

Article 342-803a provides:

> Sec. 1.  The  board  of  directors  of  a
> state  bank,  with  the  approval  of   the
> Commissioner, may cause the bank to sell all
> or  a  substantial  portion  of  the  bank's
> assets without shareholder approval if:
>
> (1)   the Commissioner,   through  examina-
> tion, finds that the interests of depositors
> and creditors  of  the  bank  are  seriously
> jeopardized because of the bank's insolvency
> or imminent insolvency   and that   it is   in
> the best  interests  of the  depositors  and
> creditors that certain assets of the bank be
> sold; and

    (2) the Federal Deposit Insurance Corporation or its successor has expressly consented to and approved the transaction and has agreed to provide assistance to the prospective buyer under 12 U.S.C. Section 1823(c) or a comparable provision of law.

    Sec. 2. A sale under this article must include an assumption and promise by the buyer to pay or otherwise discharge:

    (1) all of the bank's liabilities to depositors;

    (2) all of the bank's liabilities for salaries of the bank's employees incurred before the date of the sale; and

    (3) the obligations incurred by the Commissioner and fees and assessments due to the Department arising out of the supervision of the bank or the sale.

    Sec. 3. This article does not affect the right of the Commissioner to take any other appropriate action permitted by [articles 342-801a or 342-803] or any other provision of this code.

V.T.C.S. art. 342-803a.

You relate that the FDIC is reluctant to participate in assistance schemes undertaken pursuant to this provision because of unspecified concerns about the constitutionality of article 342-803a. Accordingly, you seek our advice on the following questions:

    (1) Does article 342-803a violate any of the applicable substantive or procedural requirements of the due process clauses of the United States Constitution or any similar provisions of the Texas Constitution?

    (2) Does article 342-803a violate the impairment of contracts clause of Article One of the United States Constitution or any similar provision of the Texas Constitution?

(3) What are the nature and extent of the banking commissioner's powers to regulate state banks, particularly those banks that are insolvent or imminently insolvent? Can the banking commissioner use his regulatory powers to effectuate the sale of a bank's assets without judicial or shareholder approval if he finds that the interests of depositors or creditors are seriously jeopardized because of the bank's insolvency or imminent insolvency, and that it is in the best interest of depositors and creditors that certain assets be sold?

We assume that your last question is limited to the scope of the commissioner's power over "failing" banks in the limited circumstances specified by the legislature in article 342-803a. Article 342-803a furnishes a concise, complete description of the banking commissioner's powers to effectuate transactions designed to prevent "failing" banks from becoming "failed" ones. We note that in addition to article 342-803a, the Banking Code provides a "complete system of laws governing . . . banks" and vests the banking commissioner with the authority to insure a strong banking system for Texas by expeditiously winding up the affairs of a failed bank. V.T.C.S. art. 342-101. See also Skillern, Closing and Liquidation of Banks in Texas, 26 Sw. L.J. 830 (1972).

The powers of the banking commissioner have been set out by the legislature in the Banking Code of 1943, Title 16, V.T.C.S. Among the more important of these powers is the power to close insolvent banks. Article 342-803 provides that whenever the commissioner,

through examination, finds that the interests of depositors and creditors of a state bank are seriously jeopardized through its insolvency or imminent insolvency and that it is to the best interest of such depositors and creditors that the bank be closed and its assets liquidated, he may close and liquidate the bank, unless its board of directors close the bank and place it in his hands for liquidation. . . .

V.T.C.S. art. 342-803. A bank is insolvent when it is unable to pay its obligations, including the demands of depositors, as they come due. See V.T.C.S. art. 342-803

and cases decided thereunder. The Banking Code sets forth in detail the duties which the commissioner of banking must discharge with regard to banks closed for liquidation. V.T.C.S. arts. 342-803 to 342-808.

You note that article 342-803a provides an important mechanism to facilitate the state's efforts to prevent a "failing" institution from becoming a "failed" one. You define a "failing" institution as one which is "imminently insolvent and whose failure is highly probable." You relate that the

> financial condition of these institutions weakens gradually until an insolvency is produced and the institution is closed. The transition from a failing institution to a failed one takes from six to twelve months and the institution's value steadily deteriorates as it gets closer to failure.

You state that the new powers granted to the banking commissioner by article 342-803a permit the commissioner to prevent the outright closure of banks by facilitating arrangements which include the sale of a failing bank's "healthy" assets to a new entity which also agrees to assume some of the selling bank's liabilities, as specified in the statute.[1] The statute does not, however, permit the Banking Commission to act unilaterally; a sale of assets under article 342-803a can take place only if the Federal Deposit Insurance Corporation

> has expressly consented to and approved the transaction [for the sale of assets] and has agreed to provide assistance to the prospective buyer under 12 U.S.C. Section 1823(c) or a comparable provision of law.

---

1. Article 342-803a does not require the purchasing entity to assume claims of subordinated creditors or claims of stockholders. See V.T.C.S. art. 342-804a. Because the article requires only a partial assumption of liabilities, the consummation of a sale of assets transaction under article 342-803a may in practice be insufficient to save a failing bank from insolvency.

V.T.C.S. art. 342-803a, §1(2).  It is in this context that you ask us to address the FDIC's concerns about the constitutionality of the sale of assets procedure set forth in article 342-803a.

I.

A.

Article XVI, section 16,  of the Texas  Constitution provides, in pertinent part:

> Sec. 16.  (a)  The  Legislature shall  by general laws, authorize the incorporation of state banks  and savings  and loan  associations and  shall  provide for  a  system  of State supervision, regulation and control of such bodies  which will  adequately  protect and  secure  the  depositors  and  creditors thereof.

This provision permits the legislature, by general law, to authorize the creation  of corporations  with banking  and discounting privileges and to provide for the control  and supervision of such corporations  by the state.   Pursuant to this constitutional grant of legislative authority, the Texas Banking Code of 1943

> provides a complete system of laws governing the organization, operation, supervision and liquidation  of  state  banks,  and  to  the extent indicated by  the context,  governing private banks and  national banks  domiciled in this State. . . .

V.T.C.S. art. 342-101.

The Banking Code specifically commits the  management of all  of the  affairs of  a banking  corporation to  the directors of the banking corporation elected by the shareholders, unless  the  shareholders  have  adopted  by-laws providing otherwise.  V.T.C.S.  art. 342-409.  Unlike  the Texas Business Corporations  Act, nothing  in the  Banking Code requires that shareholders  approve the sale of  all, or substantially all, of the banking corporation's assets. Compare  Bus. Corp. Act art. 5.10 (A)(3) (two-thirds  vote of shareholders required for sale of all, or substantially all, of the assets of a non-banking corporation outside of the  regular  course  of  business).   The  provisions  in article 342-803a of the Banking Code for a sale of  assets

based solely on the approval of the directors are consistent with the Banking Code's overall commitment of authority to directors elected by the shareholders rather than to the shareholders themselves.

In the context of the question under discussion, it is important to note that the provisions of the Business Corporations Act do not apply to banking corporations unless the Banking Code is silent with regard to some matter of corporate governance provided for in the Business Corporations Act. Bus. Corp. Act art. 9.14, §(A). Where the Banking Code is silent, the provisions of the Business Corporations Act will apply, to the extent that they are not inconsistent with the provisions of the Banking Code. Id.

The provision in the Business Corporations Act requiring shareholder approval for the sale of all of the assets of a corporation outside of the regular course of business is in conflict with the provisions of the Banking Code, which leave such decisions generally in the hands of the directors. Article 342-409 of the Banking Code requires that the directors, and not the stockholders, make decisions about the management of the bank, unless a banking corporation's by-laws provide otherwise. Article 342-803a is consistent with the Banking Code generally in committing a decision about whether to sell all of the assets of the bank corporation to the directors. Since the Banking Code commits authority over bank affairs to directors rather than shareholders, the provision in the Business Corporations Act requiring shareholder approval for the sale of all of the assets of a corporation outside of the regular course of business does not apply to sales of bank assets such as those contemplated in article 342-803a of the Banking Code. See generally Robertson v. State ex rel. William H. Clement, 406 S.W.2d 90 (Tex. Civ. App. -- Fort Worth 1966, writ ref'd n.r.e.) (Banking Code of 1943 provides a complete system of laws governing the organization of banking corporations; when the Banking Code is specific about some aspect of the management of a banking corporation, it operates to the exclusion of provisions in the Business Corporations Act).

Consequently, in the ordinary situation, article 342-803a cannot possibly impair any of the "rights" of shareholders guaranteed under either federal or state law, because shareholders in banking corporations have no "right" to approve the sale of the assets of the corporation in the situation specified in article 342-803a,

unless they have reserved that right in a corporate
by-law. Only when the shareholders have reserved through
a by-law the right to approve the sale of the assets
of the bank do questions about the constitutionality of
article 342-803a arise.

B.

The by-laws of a corporation are a contract between
the corporation and its shareholders. Ainsworth v.
Southwestern Drug Corporation, 95 F.2d 172 (5th Cir. 1938)
(citing Texas law). Both the federal and state constitu-
tions prohibit the impairment of contracts by the state.
U.S. Const., art. I, section 10, clause 1. U.S. Const.
amend. 14; Tex. Const. art. I, §16. In this case, it is
important to determine whether the legislature's
determination in article 342-803a that the directors of a
banking corporation may sell all of the assets of the
corporation without shareholder approval impermissibly
impairs the contract rights of shareholders who, by means
of a corporate by-law, have reserved the right to approve
such transactions.

Ordinarily, rights are governed by the law that
existed at the the time the rights vested. Langever v.
Miller, 76 S.W.2d 1025 (Tex. 1934). Subsequent legisla-
tion that impairs vested contract rights is unconstitu-
tional. Id.; Travellers' Insurance Company v. Marshall, 76
S.W.2d 1007 (Tex. 1934). See, e.g., Trustees of Dartmouth
College v. Woodward, 17 U.S. (4 Wheat.) 518 (1819)
(charters granted to corporations by state are
constitutionally protected contracts).

In the case of banking corporations created under the
general authority granted by the constitution to the
legislature, a somewhat different analysis of the issue of
an unconstitutional impairment of a contract must be
pursued. Every charter granted to a banking corporation
by the state is subject to the following reservation:

> The rights, privileges, and powers conferred
> by this [Banking] Code are held subject to
> the right of the legislature to amend, alter
> or reform the same.

V.T.C.S. art. 342-302. See also Bus. Corp. Act. art. 9.12.

Without this specific reservation, we believe that
article 342-803a would be considered, under Texas law, to
work an unconstitutional impairment of a contract between

the shareholders and the corporation, where the share-holders have reserved the right, by means of a by-law, to vote to approve the sale of all, or substantially all, of the assets of the banking corporation. Tex. Const. art. I, §16; Travellers' Insurance Co., supra.[2]

Both the charter of a corporation and the legislative act creating it become part of the contract between share-holders, Shanken v. Lee Wolfman, Inc., 370 S.W.2d 197 (Tex. Civ. App. - Houston 1963, writ ref'd n.r.e.), and all relevant constitutional and statutory laws are incor-porated as a part of the corporate charter (which controls the by-laws of the corporation). Shaw v. Lone Star Building & Loan Association, 71 S.W.2d 863, 867, (Tex. 1934) see also Falkner v. Southwestern Sav. and Loan Ass'n of Houston, 320 S.W.2d 164 (Tex. Civ. App. - Austin 1958), aff'd in part, rev'd in part, 331 S.W.2d 917 ( Tex.1960).

The legislature's reservation of authority, in article 342-302, to alter the Banking Code, is sufficient to permit the state to alter the relationship between the state and the banking corporation, and the relationship between the banking corporation and its shareholders, without violating any constitutional prohibitions against the impairment of contracts. Trustees of Dartmouth College, supra, per concurring opinion of Justice Story. See also The Sinking Fund Cases, 99 U.S. 700 (1878); Brundage v. The New Jersey Zinc. Co., 226 A.2d 585 (1967) See generally 18 Am. Jur. 2d §§83-90; Official Comments to section 1.02 of the Model Business Corporations Act (1987); 7A Fletcher Cyclopedia Corporations, §§3668-3690; Gibson, How Fixed are Class Shareholder Rights?, 23 Law &

---

2.  The Texas Constitution has been interpreted to impose a far stricter limit on legislation under the police power which impedes the exercise of a pre-existing contract right that which is imposed by the federal constitution. Compare the decision of the Texas Supreme Court in Travellers' Insurance Co., supra (holding a mortgage moratorium unconstitutional under article I, section 16, of the Texas Constitution even under the circumstances of a general economic collapse) with the decision of the United States Supreme Court in Home Building & Loan Association v. Blaisdell, 290 U.S. 398 (1934) (sustaining a similar moratorium against a challenge under the contracts clause).

Contemp. Probs., 283 (1958); Note, "Corporations -- Stock Alienation Restrictions -- Powers of Directors to Restrict Issued Stock," 14 Sw. L. J. 106 (1960); Note, "Corporations: Alteration of Shareholder's Rights: Scope of the Reserved Power," 3 Okla. L. Rev. 222 (1950). Contracts, however express, may not fetter the constitutional authority of the legislature. "Parties may not remove their transactions from the reach of the dominant constitutional power by making contracts about them." Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 307-08 (1935). Any other conclusion would alter the long-standing policy, embodied in both the state constitution and the banking code, of placing strict controls upon, the operations of banking corporations to protect the public interest.

## II.

You also inquire whether article 342-803a deprives shareholders in banking corporations of their property in violation of either the United States or Texas Constitutions. See U.S. Const., amends. 5 and 14; Tex. Const. art. I, §17. We conclude that the statute works no such deprivation.

Article I, section 17, of the Texas Constitution provide, in part:

> No person's property shall be taken, damaged
> or destroyed or applied to a public use
> without adequate compensation being made,
> unless by the consent of such person. . . .

We are unable to determine how article 342-803a could be applied to violate either article I, section 17, of the Texas Constitution, or the United States Constitution's Fifth and Fourteenth Amendment prohibitions against deprivation of property without "just compensation" or "due process of law. Article 342-803a of the Banking Code does not permit the banking commissioner to order the directors of banking corporation to sell the assets of the corporation in lieu of closing it; it merely permits the commissioner to approve, and in some ways to facilitate, such a sale after the directors have approved it in accord with their powers under the Banking Code. Nor do we understand that the banking commissioner is granted the power by article 342-803a to "coerce" recalcitrant directors to vote to sell the banking corporation's assets. While the directors of a failing bank may not be

given to acts of heroism in resisting the unpleasant suggestions of bank regulators, article 342-803a gives the commissioner no power to <u>force</u> bank directors to do anything.  So long as a bank is not in a condition which would permit the banking commissioner to intervene in its management, or to close it, <u>see</u> V.T.C.S. arts. 342-801 and 803, then the directors remain in control of the institution's fate.

. The foregoing analysis leads us to conclude that article 342-803a cannot be considered to be a species of "eminent domain," "forced sale," or "taking" statute, since it "takes" nothing, and since it can in no way be said to render valueless by state action something previously valuable. <u>See, e.g.</u>, Attorney General Opinion JM-827 (1987).  If anything, article 342-803a extends a modicum of hope to the shareholders of a failing, imminently insolvent bank that they may be able to preserve something of their equity property interests through a government-assisted sale of assets sufficient to raise the cash necessary to pay all claims against the bank in accordance with the table of priorities specified in article 342-804a, V.T.C.S.  The statute thus <u>preserves</u> rather than <u>defeats</u> the "distinct investment-backed expectations" of stockholders, a key factor mitigating against a "taking" label for the provision. <u>Penn Central Transportation Co. v. New York City</u>, 438 U.S. 104 (1978).

Although the banking commissioner has wide powers to act to protect the public welfare by preserving a sound banking system, those powers are circumscribed by constitutional safeguards.  The prohibitions in article I, section 17, of the Texas Constitution and the constitution forbid the state to appropriate the assets of a banking corporation owned by the stockholders, either directly, as a prize for the state treasury, or indirectly, by forcing the transfer of those assets to some private party of the state's choosing, all without payment.

Even if article 342-803a raises threshold questions which trigger the application of constitutional safeguards, analysis cannot end with a simple conclusion that any exercise of power by the state to the detriment of the owners of a failing bank is impermissible.  Under certain circumstances, property may in fact be constitutionally expropriated, without <u>any</u> compensation as an exercise of the kind of police power -- power to protect the public welfare against the depredations of banking corporations -- which the Texas Constitution expressly

reserves to the state in Article XVI, section 16. Attorney General Opinion JM-600 (1986) (and the cases cited therein). Of course, we acknowledge that the Texas Supreme Court holds that in certain circumstances property may not be taken without compensation, even in the exercise of the police power. City of College Station v. Turtle Rock Corporation, 680 S.W.2d 802, 804 (Tex. 1984); City of Austin v. Teague, 570 S.W.2d 389, 391 (Tex. 1978); Attorney General Opinion JM-294 (1984). See also Stoebuck, Police Power, Takings and Due Process, 37 Wash. & Lee L. Rev. 1057 (1980). Whether a particular application of the police power is unconstitutional is always a matter of fact, and the issue must be decided on a case-by-case basis. City of Austin v. Teague, supra; Attorney General Opinion JM-827 (1987). See also Connolly v. Pension Benefit Guaranty Corporation, 475 U.S. 211 (1986). We are confident that article 342-803a is far removed from being the species of statute that engenders such constitutional concerns. The provision, enacted to deal with general distress in the banking industry, merely implements "a public program that adjusts the benefits and burdens of economic life and . . . does not constitute a taking" requiring compensation. Connolly v. Pension Benefit Guaranty Corporation, supra. See generally Annot. "Supreme Court's views as to what constitutes "taking," within meaning of Fifth Amendment's command that private property not be taken for public use without just compensation," 57 L.Ed.2d 1254.

### III.

You relate that the Federal Deposit Insurance Corporation (FDIC), whose promise of assistance to the purchasers of a failing bank's assets (who must also assume certain of its liabilities) legally is required before article 342-803a may be applied by the banking commissioner, has expressed certain unspecified concerns about the constitutionality of the statute. Because those concerns remain unidentified, we cannot address them directly, other than to assume that they may encompass some of the points discussed in parts one and two of this opinion.

National bank regulators may rely on a federal statute which works in a much more severe fashion to accomplish certain bank "rescue" operations through the sale of assets in a way similar to article 342-803a. The provision, 12 U.S.C. section 181, provides in relevant part:

> Any [national banking] association may go into liquidation and be closed by the vote of its shareholders owning two-thirds of its stock. <u>If the liquidation is to be effected in whole or in part through the sale of its assets to and the assumption of its deposits and liabilities by another bank, the purchase and sale agreement must also be approved by its shareholders owning two-thirds of its stock unless an emergency exists and the comptroller of the Currency specifically waives such requirement for shareholder approval</u>. (Emphasis added.)

12 U.S.C. §181 (Supp. 1988). The power of the comptroller of the currency to suspend the right of shareholders to approve the sale of a bank's assets has been sustained. <u>See, e.g</u>, <u>Minichello v. Saxon</u>, 266 F.Supp. 279 (D.C. M.D. Pa. 1967), <u>aff'd sub nom. Minichello v. Camp</u>, 394 F.2d 715 (3rd Cir. 1968), <u>cert. den.</u> 393 U.S. 849, <u>rehearing den.</u>, 393 U.S. 992 (1968). We find no reported cases upholding a constitutional challenge to this statute. Certainly, the "emergency" required by the federal statute must be analogous to the situation in which article 342-803a would be applied, namely a situation in which a financial institution finds itself in a "failing" but not yet "failed" condition. <u>Minichello v. Saxon</u>, <u>supra</u>. Additionally, unlike banking corporations subject to the federal statute, shareholders in banks operating under the Texas Banking Code have no general statutory right to approve the sale of all of the assets of the corporation.

## S U M M A R Y

Article 342-803a of the Texas Banking Code of 1943, which permits the banking commissioner to approve the sale of the assets of a banking corporation by its directors in certain situations specified in the statute, is a constitutional exercise the legislature's power to provide for a safe banking system. Shareholders in banking corporations organized under the Banking Code have no right to approve the sale of all, or substantially all, of the assets of the banking corporation, unless they have reserved such a right by means of a corporate by-law. The legislature has, by means of its reserved power to amend the

Banking Code, overridden such by-laws in the
case of banking corporations operating
within the circumstances specified in
article 342-803a, V.T.C.S.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Don Bustion
Assistant Attorney General